WILLIAM F. AND JOAN M. JUDGE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27103-84.        Filed May 7, 1987.

*Eugene J. Fons*, for the petitioners.
*Edward G. Langer*, for the respondent.

CLAPP, *Judge*: By notice of deficiency dated May 1, 1984, respondent determined, pursuant to section 6651(a)(1),[1] the following additions to petitioners' Federal income taxes:

| Taxable year | Addition |
| --- | --- |
| 1976 | $778.68 |
| 1978 | 949.87 |

Subsequently, respondent amended his answer to place in dispute additions to tax pursuant to section 6653(a) in the amounts of $155.54 and $2,779.72 for the years 1976 and 1978, respectively.

The issues for decision are:

(1) Whether this Court has jurisdiction over additions to tax under section 6651(a)(1) for failure to timely file returns and section 6651(a)(2) for failure to timely pay tax, when such additions are based on amounts shown in a return, and under section 6654 for failure to make estimated tax payments when a return has been filed;

(2) Whether petitioners are liable for additions to tax pursuant to section 6651(a)(1) for failure to file timely returns for the years 1976 and 1978;

(3) Whether petitioners are liable for additions to tax pursuant to section 6651(a)(2) for failure to make timely payments of tax for the year 1978;

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue.

(4) Whether petitioners are liable for an addition to tax pursuant to section 6654 for the year 1978 for failure to make payments of estimated tax; and

(5) Whether petitioners are liable for additions to tax pursuant to section 6653(a) for negligence or intentional disregard of the rules and regulations for the years 1976 and 1978.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners William F. and Joan M. Judge resided in Milwaukee, Wisconsin, at the time of the filing of the petition in this case.

Petitioners' Federal individual income tax return, Form 1040, for the year 1976 was signed by their return preparer on August 31, 1979. This Form 1040 was filed with the Internal Revenue Service on January 7, 1980, and shows adjusted gross income of $25,255.61. Petitioners' total corrected income tax liability for 1976 was $3,110.70. Petitioners' Form 1040 for 1978 was filed on August 25, 1982, and shows adjusted gross income of $188,191.81. Petitioners' total corrected income tax liability for 1978 was $55,594.47.

On November 22, 1982, respondent assessed petitioners an addition to the tax under section 6651(a)(1) for 1978 in the amount of $12,948.75, which was paid by January 13, 1984. At the same time, respondent also determined that petitioners were subject to additions to tax under section 6651(a)(2) in the amount of $11,651 for failure to make timely payments of their 1978 tax liability and under section 6654 in the amount of $1,657 for failure to make estimated tax payments in 1978. Such amounts were also paid by petitioners.[2]

---

[2]By letter dated Nov. 21, 1983, respondent notified petitioners of their entire liability for taxes, additions to tax, and interest determined up to that time for the year 1978. This letter included the additions under sec. 6651(a)(1), sec. 6651(a)(2), and sec. 6654. The parties stipulated to the amount of the sec. 6651(a)(1) addition and stipulated that such addition had been paid, but did not stipulate any facts relating to the other additions. In their amendment to petition and on brief, petitioners stated that all three of the additions had been paid. Respondent has not argued that such additions were not paid. We therefore conclude that petitioners did pay such additions.

Petitioners' Form 1040 for 1970 was filed on October 30, 1974. Petitioner William Judge (petitioner) signed and filed a request for extension of time for filing the 1970 return on April 27, 1971. This request which was approved, extended the time for filing until June 15, 1971.

Petitioners' Forms 1040 for the years 1971, 1972, and 1973, were filed on March 14, 1980. Petitioners' Form 1040 for 1971 was signed by a return preparer on August 19, 1976. Petitioners' Forms 1040 for 1972 and 1973 were signed by petitioner on April 26, 1978. Petitioners' Forms 1040 for 1974 and 1975 were filed on February 13, 1980, although they had been signed by petitioner on May 30, 1978.

On October 5, 1979, the Kansas City Service Center mailed Form 4901 to petitioner which informed him that the Kansas City Service Center had no record of receiving his Form 1040 for the year 1977. It also advised him that if he had not filed his return, he should file it within the following 2 weeks. Petitioners failed to file a return for 1977. A Form 1040 for 1977 was completed for petitioners on May 14, 1982, by their accountant and was signed by petitioners.

On December 4, 1976, a U.S. Partnership Return of Income, Form 1065, for the fiscal year ending August 31, 1976, was filed for the One Hour Martinizing partnership (One Hour). This return was signed by petitioner. A Form 1065 for the year 1976 for the Hillcrest Apartments partnership (Hillcrest) was signed by petitioner on May 2, 1978, and filed on August 28, 1978. A Form 1065 for 1977 for Hillcrest was signed by petitioner on January 5, 1979.

A Form 1065 for 1975 for the Fred Harwood Joint Venture (Fred Harwood), was signed by a return preparer on April 12, 1976. This Form 1065, signed by petitioner, was filed on July 21, 1980. A Form 1065 for 1976 for Fred Harwood was signed by a return preparer on May 19, 1979. This Form 1065, signed by petitioner, was filed on July 14, 1980.

Petitioner was furnished with Forms K-1 for Storybook Enterprises partnership for the years 1976, 1977, and 1978, and a Form K-1 for Meadows of Brookfield partnership for 1978 shortly after the end of each of those years.

Petitioner underwent coronary bypass surgery in January of 1976. After his surgery, petitioner went back to work on a part-time basis. Petitioner's doctor prescribed an antidepressant for him. The prescription for the antidepressant was discontinued by the end of 1976, and petitioner's doctor did not treat him for depression after December 1976.

Petitioner employed Eleanore Gafney as a general secretary and daily bookkeeper in his office from 1975 through June 1, 1978. The books and records of Meadows of Brookfield and Storybook Enterprises were primarily maintained by third parties located outside of petitioner's office. The tax returns of Storybook Enterprises and Meadows of Brookfield were prepared based upon such books and records. During the years 1976, 1977, and 1978, petitioner had numerous business checking accounts upon which he signed checks. During 1976, petitioner signed 25 documents relating to real estate transactions such as disclosure-settlement statements, closing statements, and mortgage loan settlements. During 1977, petitioner signed 4 documents relating to real estate transactions such as disclosure-settlement statements and closing statements. During 1978, petitioner also signed a closing statement.

On April 14, 1976, petitioner signed a Wisconsin Real Estate Transfer Return. On April 18, 1977, petitioner signed a claim release with respect to a debt owed to him. On April 30, 1976, petitioner signed two agreements relating to the transfer of certain real property by petitioner to another party. Petitioner prepared warranty deeds that were filed with county offices in Wisconsin on June 1, 1976, July 29, 1976, and June 15, 1977. Petitioner also prepared a satisfaction of mortgage that was filed with a county office in Wisconsin on July 29, 1976.

Late in 1979, a criminal investigation of petitioner was opened by the Criminal Investigation Division, Milwaukee, Wisconsin, for the years 1976, 1977, and 1978. The initial contact with petitioner by the special agent assigned to the case was on December 21, 1979. By letter dated October 31, 1981, petitioner was informed by the Criminal Investigation Division that he was no longer the subject of investigation.

On June 16, 1983, petitioner signed a Form 4549, Income Tax Examination Changes, agreeing to the Commissioner's

determination of deficiencies in tax for the years 1976 and 1978, but objecting to the additions to tax pursuant to section 6651(a)(1).

Petitioners made no deposits of estimated income tax for the year 1978. Petitioners did not pay the income tax of $51,795 shown on their 1978 income tax return prior to November 1983.

OPINION

A brief synopsis of the facts which brought this case before us is as follows. Petitioners filed their returns for the years 1976 and 1978, in 1980 and 1982, respectively. In 1982, respondent determined additions to tax pursuant to sections 6651(a)(1), 6651(a)(2), and 6654 based upon the tax liabilities shown on the return for 1978. Respondent then audited petitioners' returns for 1976 and 1978 and, in 1983, petitioners signed a Form 4549, Income Tax Examination Changes, agreeing to the Commissioner's determination of deficiencies in tax for both of the years. Petitioners, however, objected to the Commissioner's determination of further additions to tax based on the increased tax liabilities to which they had agreed. Respondent then issued a notice of deficiency determining additions to tax pursuant to section 6651(a)(1) based on the increased tax liabilities. Petitioners amended their petition to place in dispute the additions to tax determined by respondent pursuant to sections 6651(a)(1), 6651(a)(2), and 6654 to the extent such additions were based on the tax liability shown in their return for 1978. Respondent amended his answer to place in dispute additions to tax pursuant to section 6653(a) for the years 1976 and 1978.

*Jurisdiction*

The first issue for decision is whether this Court has jurisdiction over the additions to tax which are the subject of petitioners' amended petition.

As we have often stated, this Court is a court of limited jurisdiction. *Estate of Young v. Commissioner*, 81 T.C. 879, 881 (1983); *Medeiros v. Commissioner*, 77 T.C. 1255, 1259 (1981); *Wilt v. Commissioner*, 60 T.C. 977, 978 (1973). We

may only exercise jurisdiction to the extent expressly permitted by Congress. See sec. 7442; *Breman v. Commissioner*, 66 T.C. 61, 66 (1976).

Respondent asserts that, based on our holding in *Estate of Young v. Commissioner, supra*, we do not have jurisdiction over any addition to tax which is not subject to the deficiency procedures. Whether an addition to tax is subject to the deficiency procedures depends upon section 6659,[3] which provides:

SEC. 6659(a). ADDITIONS TREATED AS TAX.—Except as otherwise provided in this title—

(1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes;

(2) Any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.

(b) PROCEDURE FOR ASSESSING CERTAIN ADDITIONS TO TAX.—For purposes of subchapter B of chapter 63 (relating to deficiency procedures for income, estate, gift, and certain excise taxes), subsection (a) shall not apply to any addition to tax under section 6651, 6654, or 6655; except that it shall apply—

(1) in the case of an addition described in section 6651, to that portion of such addition which is attributable to a deficiency in tax described in section 6211; or

(2) to an addition described in section 6654 or 6655, if no return is filed for the taxable year.

Pursuant to the above provisions, the deficiency procedures applicable to income, estate, gift, and certain excise taxes are also generally applicable to additions to tax. Section 6659(b), however, provides that, for purposes of subchapter B of chapter 63 (the deficiency procedures), the rules of subsection (a) are not applicable to additions to tax under section 6651 unless such additions are attributable to a deficiency,[4] or under section 6654 and section 6655 unless a return has not been filed for the taxable year.

---

[3]The Economic Recovery Tax Act of 1981 redesignated sec. 6659 as sec. 6660 applicable to returns filed after Dec. 31, 1981. Sec. 722(a)(1), (4), Pub. L. 97-34, 95 Stat. 172, 341, 342. In turn, the Tax Equity and Fiscal Responsibility Act of 1982 redesignated sec. 6660 as sec. 6662. Sec. 323(a), (c), Pub. L. 97-248, 96 Stat. 324, 613, 615, applicable to returns the due date (determined without regard to extension) for filing of which is after Dec. 31, 1982.

[4]Sec. 6211(a) provides:

SEC. 6211(a). IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, 44, and

In *Estate of Young*, we determined that we did not have jurisdiction over the addition to tax for late payment under section 6651(a)(2) where such addition was determined in a statutory notice. We held that because the addition to tax under section 6651(a)(2) was not attributable to a deficiency, the addition was not the proper subject of a notice of deficiency and we did not have jurisdiction to determine a deficiency with respect to such an addition.[5] 81 T.C. at 882-883. We specifically stated in that case, however, that we were not deciding whether the Court has jurisdiction under section 6512(b) to determine an overpayment of the late payment addition. 81 T.C. at 888. Our holding in *Estate of Young* was limited to interpreting our deficiency jurisdiction pursuant to section 6659 and section 6214.[6]

Our jurisdiction to determine overpayments is provided by section 6512(b). Section 6512(b)(1) states,

SEC. 6512(b). OVERPAYMENT DETERMINED BY TAX COURT.—

(1) JURISDICTION TO DETERMINE.—Except as provided by paragraph (2) and by section 7463, if the Tax Court finds that there is no

---

45 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of—

   (1) the sum of

      (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

      (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

   (2) the amount of rebates, as defined in subsection (b)(2), made.

[5]In this case, respondent concedes that we do have jurisdiction over the addition to tax determined under sec. 6651(a)(1) to the extent that addition was based on amounts not included in petitioners' return, because such addition is attributable to a deficiency within the meaning of sec. 6659(b)(1).

[6]In response to our holding in *Estate of Young*, Congress amended sec. 6214(a) in sec. 1554 of the Tax Reform Act of 1986. The Conference Committee statement of managers states with respect to this provision:

"The Tax Court has held that it does not have jurisdiction over the addition to tax for failure to pay the amount of tax shown on the taxpayer's return, even though it has jurisdiction to redetermine a deficiency in tax with respect to that return (*Est. of Young v. Comm'r.*, 81 T.C. 879 (1983))."

     \*     \*     \*     \*     \*     \*     \*

"[The bill provides that] the Tax Court has jurisdiction over this addition to tax for failure to pay an amount shown on the return where the Tax Court already has jurisdiction to redetermine a deficiency in tax with respect to that return.

"[H. Rept. 99-841 (Conf.), at II-804 (1986).]"

While the above language reflects Congress' intent that we take jurisdiction over the addition to tax dealt with in *Estate of Young*, sec. 6214 and *Estate of Young* deal only with this addition in a deficiency posture and we do not believe that they are directly relevant to the case now before us.

deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, * * * in respect of which the Secretary determined the deficiency, or *finds that there is a deficiency but that the taxpayer has made an overpayment of such tax,* the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. [Emphasis added.]

Section 6659(a)(2) provides that any reference in the Internal Revenue Code to "tax" is to be treated as also referring to additions to tax. For purposes of subchapter B of chapter 63, section 6659(b) makes this rule inapplicable to the additions to tax which the subsection provides are not subject to the deficiency procedures. Section 6512, however, is not part of subchapter B of chapter 63.

A literal reading of section 6512(b) and section 6659(a)(2) would, therefore, lead to the conclusion that all additions to a tax are to be considered part of such tax in determining the amount of an overpayment.[7] Such a conclusion is aided by the above emphasized language which allows us to determine an overpayment based upon items which are not part of a deficiency within the meaning of section 6211(a). See *Keefe v. Commissioner*, 15 T.C. 947, 955-956 (1950). This provision allows us to find both a deficiency and an overpayment with respect to the same taxable year. We recognize that the above emphasized language was added to section 6512 (actually to its predecessor) for the purpose of dealing with withheld tax and payments of estimated tax, which amounts do not decrease the amount of a deficiency but are nonetheless to be taken into account in determining the amount of an overpayment. *Keefe v. Commissioner*, *supra* at 954-956. Such language, however, can also be read to allow us to determine an overpayment of additions to tax which are neither determined as part of the deficiency nor properly an offset to the amount of a deficiency.

---

[7]The provisions of sec. 6512(b) only give us jurisdiction to determine an overpayment where respondent has determined the existence of a deficiency. We must first have jurisdiction to find that "there is no deficiency" or that "there is a deficiency but that the taxpayer has made an overpayment." While we recognize that the notice of deficiency in this case did not place in issue any amount of income tax for the year 1978, we have previously held that where a statutory notice determines only additions to tax under sec. 6651(a)(1), the statutory notice is sufficient to confer jurisdiction upon this Court to determine a deficiency. *Estate of DiRezza v. Commissioner*, 78 T.C. 19, 25-27 (1982).

In *Estate of Baumgardner v. Commissioner*, 85 T.C. 445 (1985), we dealt with the issue of whether this Court has jurisdiction to determine overpayments of interest paid on installment payments of estate tax. We pointed out that section 6601(e) provides that "Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." We noted that this provision could be interpreted as bringing such interest payments within the scope of section 6512(b). However, because we found that "the major purpose of the language [in section 6601(e)] treating interest and tax the same is to provide the Government with administrative tools to demand payment, assess, and collect the interest in the same manner that has been provided for the tax," we did not find the rule in section 6601(e) to be controlling with respect to section 6512(b). 85 T.C. at 450. In *Estate of Baumgardner* we concluded that we did have jurisdiction to determine an overpayment of interest on installment payments of estate tax, but this conclusion was not based upon section 6601(e).

In *Estate of Baumgardner* we noted the similarity between the provisions set out in section 6601(e) and section 6659(a)(2). We pointed out that a restrictive interpretation of the term "tax" as used in section 6512(b) would limit our overpayment jurisdiction with respect to both interest and additions to tax. 85 T.C. at 450. With respect to additions to tax, however, we have held that our jurisdiction is primarily dependent upon section 6659. *Estate of Young v. Commissioner, supra* at 881. In this respect, therefore, the scope of section 6659 is different from that of section 6601(e), as discussed in *Estate of Baumgardner*. Further, our jurisdiction to determine overpayments of additions to tax which are subject to the deficiency procedures has not been questioned. There is no apparent basis, however, upon which to distinguish our overpayment jurisdiction with respect to additions which are subject to the deficiency procedures from those which are not subject to the deficiency procedures. Either section 6659(a)(2) applies to deem them both to be "tax" within the meaning of section 6512(b) or it accomplishes this for neither of them.

Because of the broader scope of section 6659(a)(2), and because section 6659(a)(2) applies to both deficiency and nondeficiency items for purposes other than subchapter B of chapter 63, we believe that the provisions of section 6659(a)(2) can be read as controlling with respect to section 6512(b). See *Huntsberry v. Commissioner*, 83 T.C. 742, 747-748 (1984). Such a reading would give us jurisdiction to determine an overpayment with respect to additions to tax, whether or not such additions are subject to the deficiency procedures. Overpayment jurisdiction with respect to such additions to tax, however, also follows from the reasoning upon which our holding in *Estate of Baumgardner* was based.

In reaching the conclusion in *Estate of Baumgardner* that our jurisdiction under section 6512(b) extended to the interest payments there in issue, we looked to the statutory framework of which section 6512(b) is a part, and to the Treasury Department's interpretation of the term "overpayment." Such considerations are equally appropriate here.

We noted that in interpreting section 6512(b) some consideration should be given to section 6512(a). Section 6512(a) provides that when a taxpayer petitions the Tax Court neither the U.S. District Court nor the Claims Court has jurisdiction over a refund suit brought by the taxpayer until the Tax Court's decision has become final. In *Estate of Baumgardner* we stated that this provision demonstrates a "clear statutory intent" that the Tax Court be able to determine an overpayment to the exclusion of the District Courts and Claims Court. We found that "This intent would be frustrated by a reading of sec. 6512(b) that limits the Tax Court's jurisdiction to determining an 'overpayment' which varied from 'overpayments' that the excluded forums could have found." 85 T.C. at 451.

Further, while the term "overpayment" is not statutorily defined, the Treasury Department has interpreted the term in providing regulations for the administration of section 6611 (relating to interest on overpayments). Section 301.6611-1(b), Proced. & Admin. Regs., provides, in part:

there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to the previous

payments) is in excess of the tax liability (*including* any interest, *addition to the tax*, or additional amount) * * * [Emphasis added.]

The interpretation given the term overpayment by the Treasury Department is, therefore, consistent with the assumption that section 6659(a)(2) is applicable in determining the amount of an overpayment.

Finally, in reaching the conclusion that we do have jurisdiction over the additions to tax here in issue, we reiterate certain of our statements made in *Estate of Baumgardner*,

> Prior opinions on this issue have focused on the Tax Court's role in providing a prepayment forum for taxpayers. They myopically see this purpose along with the statutorily limited jurisdiction as reasons to be extra conservative in determining the Tax Court's jurisdiction. But these opinions have failed to recognize that Congress has legislatively provided for the exceptional situation where, after a deficiency has been determined and the taxpayer has petitioned the Tax Court, an overpayment results. Although there is no legislative history to assist us, it is hard to imagine that Congress could have intended to bifurcate an "overpayment" by limiting the taxpayer's refund to "tax" only. It is equally hard to imagine that an "overpayment" has a different meaning depending upon the forum. Either of those approaches would force some taxpayers to resolve a single tax controversy in two different forums. * * * [85 T.C. at 456-457.]

The above statements are strongly compelling with respect to the additions to tax which are at issue in this case. The additions to tax under section 6651(a)(1), and section 6651(a)(2), are inapplicable if it is determined that the failure on the part of the taxpayer to file his return on a timely basis or pay the tax shown on his return on a timely basis is due to "reasonable cause and not due to willful neglect." Similarly, one of the exceptions (beginning in 1984) to the application of the addition to tax under section 6654 has, as one of its elements, that the failure to pay estimated tax be "due to reasonable cause and not to willful neglect." Sec. 6654(e)(3)(B). Where these additions are determined with respect to the same taxable year, the determinations with respect to these additions may often be overlapping. For potentially identical determinations to be required in multiple forums in order for a taxpayer to fully litigate his income tax liability for a given year is neither sensible nor does it serve judicial economy.

Accordingly, we hold that we have jurisdiction to determine overpayments of additions to tax under sections 6651(a)(1), 6651(a)(2), and 6654 when such additions are not subject to the deficiency procedures, but we otherwise have jurisdiction over the tax on which such additions are based.[8]

### Sections 6651 and 6654 Additions

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect.[9] Similarly, section 6651(a)(2) imposes an addition to tax for failure to make timely payment of a tax shown on a return unless such failure is due to reasonable cause and not willful neglect.[10]

Respondent asserts that petitioners' lack of reasonable cause is demonstrated by: (1) The prior pattern of delinquent filing of returns which continued through the years in issue; (2) petitioner's ability to sign and file other income tax returns during the years of his alleged ill health; (3) petitioner's ability to conduct normal business activities during the years of his alleged ill health; (4) the testimony of petitioner's doctor that petitioner had recovered prior to

---

[8]Our jurisdiction to determine overpayments of these additions is of course further limited by the provisions of sec. 6512(b)(2) depending upon the date on which such additions were paid. In this case, however, we find that these additions were all paid sometime between Nov. 21, 1983, when respondent sent petitioners a letter informing them of their liability for such amounts, and June 21, 1985, the date upon which petitioners amended their petition. As the notice of deficiency is dated May 1, 1984, the payments satisfy the requirements of either sec. 6512(b)(2)(A) or sec. 6512(b)(2)(B). See sec. 6511(b)(2). As such, the provisions of sec. 6512(b)(2) do not prevent us from determining an overpayment of these amounts.

[9]Sec. 6651(a)(1) provides:

SEC. 6651(a). ADDITIONS TO THE TAX.—In case of failure—

(1) to file any return * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

[10]Sec. 6651(a)(2) provides as follows:

SEC. 6651(a). ADDITIONS TO THE TAX.—In case of failure—

(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *

the due date of the 1976 return; and (5) petitioner's receipt of notice of his tax obligations during the years at issue. Respondent also contends that it was the inception of a criminal investigation by the Internal Revenue Service that finally induced petitioners to file returns, and that even if petitioner was handicapped to some extent by his heart surgery, he could have directed either petitioner Joan Judge or a third party to complete the returns and pay the tax.

Petitioners assert that their failure to timely file returns from 1970 through 1978, and their failure to make timely payment of their 1978 tax liability and estimated taxes resulted from: (1) Their accountant's suffering personal problems which caused the late filing of the returns in the early 1970's; (2) petitioner's heart problems and surgery, and continued neurological and psychological problems, which prevented gathering and coordinating necessary data concerning work performed by others on his behalf; and (3) the criminal investigation by the Internal Revenue Service which caused additional delays. Petitioners have not disputed that they failed to timely file returns for the years 1976 and 1978. Nor have petitioners disputed that they failed to make required estimated tax payments in 1978, and timely payment of their tax liability for 1978. Petitioners contend, however, that such failures were due to reasonable cause and not due to willful neglect, and that therefore they are not liable for the additions to tax.

We note initially that during the year 1978, section 6654 did not contain an exception to its application based upon a showing of "reasonable cause."[11] Further, petitioners have conceded that they failed to pay estimated tax in 1978, and that they did not pay their tax liability for 1978 prior to November 1983. Accordingly, we find that petitioners are

---

[11]Sec. 6654(a) provided in 1978:

SEC. 6654(a). ADDITION TO THE TAX.—In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 * * * for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).

Subsec. (d) of sec. 6654 provided an exception to the application of subsec. (a) if the amount of estimated tax paid by the taxpayer on or before the due date of an installment equaled or exceeded the lesser of certain amounts computed under the provisions contained therein. Petitioners have presented neither evidence nor arguments to demonstrate that this exception is applicable.

liable for the addition to tax determined by respondent pursuant to section 6654.

With respect to the additions to tax under section 6651(a)(1) and (2), we agree with respondent that petitioner's prior history of delinquent filing of returns, and his extensive involvement in other business activities during the years in issue, clearly demonstrate a lack of any reasonable cause for the late filing of returns and late payment of tax.

Petitioners' Forms 1040 for the years 1970 through 1978 were filed with the Internal Revenue Service as follows:

| Year | Date signed by petitioner | Date signed by preparer | Date filed |
|------|---------------------------|-------------------------|------------|
| 1970 | --- | 10/23/74 | 10/30/74 |
| 1971 | --- | 8/19/76 | 3/14/80 |
| 1972 | 4/26/78 | 4/25/78 | 3/14/80 |
| 1973 | 4/26/78 | 4/25/78 | 3/14/80 |
| 1974 | 5/30/78 | 5/20/78 | 2/13/80 |
| 1975 | 5/30/78 | 5/30/78 | 2/13/80 |
| 1976 | --- | 8/31/79 | 1/07/80 |
| 1977 | 5/14/82 | --- | --- |
| 1978 | --- | 8/16/82 | 8/25/82 |

Petitioners' Form 1040 for 1970 was filed on October 30, 1974, following petitioner's request for an extension of the time to file the return, which resulted in the filing date being extended to June 15, 1971. None of petitioner's returns for the years 1971 through 1976 were filed prior to 1980, even though petitioner's return preparer had signed the 1971 and 1976 Forms 1040 in 1976 and 1979, respectively, and petitioner had signed the Forms 1040 for 1972 through 1975 in 1978. As respondent points out, the sudden filing of the previously prepared returns in 1980 followed, within about 3 or 4 months, the notification of petitioners that the Internal Revenue Service had commenced a criminal investigation into petitioners' 1976, 1977, and 1978 taxable years. Petitioners failed to file a return for the year 1977, even after having been notified by respondent of their failure to file. Petitioners' return for the year 1978 was not filed until 1982.

Petitioner signed numerous Forms 1065 for partnership businesses in which he was involved during the period in which he failed to timely file his Forms 1040. The partner-

ship returns were filed with the Internal Revenue Service as follows:

| Partnership | Taxable year | Date signed[12] by petitioner | Date signed by preparer | Date filed |
|-------------|--------------|-------------------------------|-------------------------|------------|
| One Hour | FY 8/31/76 | - - - | 11/15/76 | 12/04/76 |
| Hillcrest | 1976 | 5/2/78 | 5/02/78 | 8/28/78 |
| Hillcrest | 1977 | 1/5/79 | - - - | - - - |
| Fred Harwood | 1975 | - - - | 4/12/76 | 7/21/80 |
| Fred Harwood | 1976 | - - - | 5/19/79 | 7/14/80 |

Petitioner's coronary bypass surgery occurred in January of 1976. During 1976, however, petitioner signed 25 documents relating to real estate transactions such as disclosure-settlement statements, closing statements, and mortgage loan settlements. On April 14, 1976, petitioner signed a Wisconsin Real Estate Transfer Return. On April 30, 1976, petitioner executed two agreements relating to the transfer of certain real property by petitioner to another party. Petitioner prepared warranty deeds that were filed with county offices in Wisconsin on June 1, 1976, and July 29, 1976, and a satisfaction of mortgage that was filed with a county office in Wisconsin on July 29, 1976.

During 1977, petitioner signed four documents relating to real estate transactions such as disclosure-settlement statements and closing statements. On April 18, 1977, petitioner executed a claim release with respect to a debt owed to him. On June 15, 1977, petitioner prepared a warranty deed that was filed with a county office in Wisconsin. Petitioner also signed a closing statement during 1978.

Based on the above facts, we find it impossible to accept the contention that petitioner's coronary surgery and accountant were responsible for his failure to file returns on a timely basis for the years 1976 and 1978, and make timely payment of his tax liability for the year 1978. Petitioner was actively involved in the preparation and execution of business related documents and returns during the years in issue. There is no reason to believe that his surgery prevented him from filing his personal income tax returns while he was capable of continuing his involvement in such

---

[12]Petitioner had signed all five of the Forms 1065, but only the Hillcrest returns were dated by petitioner.

business activities. Rather, his failure to file returns appears to be a continuation of his ongoing pattern of delinquent return filing.

Accordingly, we hold that petitioners are liable for the additions to tax under section 6651(a)(1) and section 6651(a)(2) as determined by respondent.

### Section 6653(a) Additions

Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations.[13]

Respondent alleges that the same facts which show that petitioners failure to file their returns for the years in issue was not due to reasonable cause, show that such failures were the result of negligence or intentional disregard of rules and regulations on the part of petitioners. Petitioners make the same arguments with respect to this addition as they made with respect to the additions discussed above.

We will not again review the facts which have been established in this case. The facts as discussed above demonstrate that petitioner was aware of his duty to file returns and was capable of filing such returns. Petitioners' failure to file their returns was the continuation of an ongoing pattern of delinquent filing. The record clearly establishes that petitioners' failure to timely file returns for the years in issue was due to negligence or intentional disregard of the rules and regulations.

Accordingly, petitioners are liable for the additions to tax under section 6653(a) determined by respondent for the years in issue.

*Decision will be entered under Rule 155.*

---

[13]Sec. 6653(a) provided during the years in issue:

SEC. 6653(a). NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME, GIFT, OR WINDFALL PROFIT TAXES.—If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

Sec. 6653(c)(1) defines "underpayment" for purposes of sec. 6653 as a "deficiency" as defined in sec. 6211, except that the tax shown on a return referred to in sec. 6211(a)(1)(A) shall be taken into account only if the return was timely filed.