T.C. Summary Opinion 2011-101


UNITED STATES TAX COURT


WILLIAM B. AND CHERYL B. O'BRYANT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15472-07S.                 Filed August 15, 2011.


William B. and Cheryl B. O'Bryant, pro sese.

<u>Heather K. McCluskey</u>, for respondent.


GERBER, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2001 and 2002, the
taxable years in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

The controversy in this case is the residual of extensive settlement negotiations and the resolution of most of the determinations set forth in the notice of deficiency. The remaining issues concern: (1) Whether petitioners are liable for section 6651(a)(1) additions to tax for the 2001 and 2002 tax years; and (2) whether the Court has jurisdiction to consider certain aspects of the parties' disagreement concerning a prior tax year (1999) from which various credits were carried over for the 2001 and 2002 tax years.

### Background

This case was calendared for trial during fall 2008, and at that time the parties presented to the Court a settlement agreement that resolved all of the determinations set forth in the notice of deficiency other than the section 6651(a)(1) late-filing additions to tax and their disagreement about the application of certain overpayment credits from prior-year returns.[2] The background information in this case is complex and was further complicated by petitioners' late filing and errors

---

[2]There were numerous differences concerning the credits from prior years. The Court worked with the parties beginning in fall 2008, and after numerous telephone conferences most of the parties' differences have been resolved. The resolution of the complex computational issues required exceptional patience, cooperation, and efforts by the parties, and the Court compliments those efforts.

respondent made in the processing of petitioners' tax returns. We address only those facts that bear on the remaining issues.

Petitioners resided in California at the time their petition was filed. Following his completion of medical school in 1979, William B. O'Bryant (petitioner) began his residency in internal medicine in California. He was successful in the practice of medicine in Orange County, California. After approximately 18 years, however, petitioner found that he had a proclivity and the ability to be a day trader. Late in 1998 he abandoned the practice of medicine and became a full-time day trader. Four or five months later, petitioner wife suffered a severe head injury that resulted in a cerebral hemorrhage and coma. Following brain surgery, petitioner wife became paralyzed on the left side of her body, and she had a limited memory.

At that time petitioners had two minor children and two children in college, and petitioner ceased day trading to care for his wife and children full time. It took more than 2 years for petitioner wife to be able to get around and manage her own care independently. Initially, petitioner's wife was unable to perform most of the basic functions of human existence, and petitioner taught her to walk, eat, dress, etc.

During 2001 petitioner began working as an appeals medical director for a health insurance company. Shortly after that, his wife developed a new condition known as "normal pressure

hydrocephalus". This condition caused additional problems for petitioner and his wife, including her lack of balance, worsening short-term memory, and incontinence, among other things. She required additional brain surgery during July 2001 to implant a shunt in her cranial ventricle to allow drainage. During the following 2 years petitioner's income was insufficient to cover his family's living expenses, and he amassed approximately $150,000 in debt.

Petitioners had prepayment credits from prior years and various estimated payments, and when their 2001 and 2002 tax returns were filed, albeit late, any amounts of tax owed were small.[3] As of May 24, 2004, petitioners had not filed their 2001 and 2002 joint Federal income tax returns, and respondent prepared substitutes for returns for those years using available information from respondent's records. On or about February 24, 2006, petitioners filed 2001 and 2002 joint Federal income tax returns.

## Discussion

Section 6651(a)(1) imposes an addition to tax in the case of any failure to timely file a Federal income tax return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. A showing of reasonable cause requires

---

[3]Petitioners, after considering credits, had a refund due them for 1 of the tax years.

taxpayers to demonstrate they exercised ordinary business care and prudence and nevertheless were unable to file the tax return by the due date.  The addition will not apply if it is shown that the failure to file a timely tax return was due to reasonable cause and not due to willful neglect.  See sec. 6651(a)(1); see also <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect is interpreted as a "conscious, intentional failure or reckless indifference."  <u>United States v. Boyle</u>, <u>supra</u> at 245.

The fact that petitioners' income tax returns for 2001 and 2002 were filed late satisfies respondent's burden of production under section 7491(c) and establishes the potential for petitioners' liability for the section 6651(a)(1) addition to tax unless they can establish reasonable cause for the failure to file timely.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).

Petitioner claims that his late filing was due to reasonable cause because of his good-faith belief that prior year's credits or overpayments would result in no tax or addition to tax due[4] for 2001 and 2002.  When the 2001 and 2002 returns were due, petitioner was unable to accomplish much more than caring for his

_____

[4]Ultimately, the credits from earlier years resulted in an overpayment in 1 year.  We note, however, those circumstances do not obviate the sec. 6651(a)(1) late-filing addition to tax.

wife, children, and household while continuing to earn money to support his family.

In <u>Ruggeri v. Commissioner</u>, T.C. Memo. 2008-300, the following contrasting opinions were set forth to show some parameters of reasonable cause cases with circumstances similar to those we consider here:

> The Court has found reasonable cause where the taxpayer or a member of the taxpayer's family experiences an illness or incapacity that prevents the taxpayer from filing his or her tax return. See, e.g., <u>Tabbi v. Commissioner</u>, T.C. Memo. 1995-463 (reasonable cause found where the taxpayers' son had heart surgery and the taxpayers spent 4 months continuously in the hospital with him, and the taxpayers filed their return 2 months after their son's death); <u>Harris v. Commissioner</u>, T.C. Memo. 1969-49 (reasonable cause found where the taxpayer's activities were severely restricted, and the taxpayer was in and out of hospitals because of various severe medical ailments including stroke, paralysis, heart attack, bladder trouble, and breast cancer).

> On the other hand, the Court has not found reasonable cause where the taxpayer does not timely file but is able to continue his or her business affairs despite the illness or incapacity. See, e.g., <u>Judge v. Commissioner,</u> 88 T.C. 1175, 1189-1191 (1987) (no reasonable cause found where the taxpayer had a long history of delinquent filing of returns and the taxpayer was actively involved in preparing and executing business-related documents despite illness during years at issue); <u>Watts v. Commissioner</u>, T.C. Memo. 1999-416 (reasonable cause not found where, although the taxpayer's mother and daughter were both ill and the taxpayer frequently took them to see doctors, the taxpayer also performed extensive architectural services in the taxpayer's business); <u>Wright v. Commissioner</u>, T.C. Memo. 1998-224 (reasonable cause not found where the taxpayer had capacity to attend to matters other than filing tax returns despite the trauma of his mother's disappearance and death), affd. without published opinion 173 F.3d 848 (2d Cir. 1999).

Petitioner's circumstances are most like those in <u>Tabbi v. Commissioner</u>, <u>supra</u>, and <u>Harris v. Commissioner</u>, <u>supra</u>, in which the Court found reasonable cause for the late filing. The record reflects that after petitioner wife's accident he was consumed by his constant attention to her needs during the period under consideration; by his unsuccessful[5] attempt to earn enough money to pay the bills; by his obligation to care for his family; and by the maintaining of his household. When the returns were due petitioner slept little and had no time for any other activity. Under these circumstances, petitioner attempted to maintain sufficient records but was nevertheless unable to file the tax returns within the prescribed time. Additionally, during that time petitioners' returns were being audited, and there were substantial differences between the parties concerning the application of credits and overpayments from prior years. The failure to file was not due to petitioners' intentional failure or reckless indifference.

We accordingly hold that petitioners are not liable for the late-filing addition to tax under section 6651(a)(1) for the 2001 and 2002 tax years.

Finally, we turn to the computational issue. By way of background, the genesis of the problem was the filing of

---

[5]During the period 2001 to 2003 petitioner went approximately $150,000 into debt.

petitioners' 1998 tax return, wherein they reported a $21,991 overpayment and directed that the overpayment be applied to estimated tax payments for 1999. Respondent, instead of applying the overpayment to 1999, sent petitioners a refund check for $21,991. Petitioners did not cash the refund check; shortly thereafter their 1998 tax return came under audit; no amount of the claimed overpayment was credited to the 1999 tax year; and respondent placed a "freeze" on the $21,991 refund for 1998. Ultimately, in connection with petitioners' earlier case before this Court, respondent released some portion of the 1998 refund. Through a combination of respondent's computational and related errors, petitioners' late filing of returns, and litigation with respect to 1998, 1999, 2001, and 2002 the computational and other differences in the amount of credits to be applied or penalties for any year were compounded. These complexities caused further delay in the filing of petitioners' 2001 and 2002 tax returns. The parties worked diligently and resolved all but one of those differences.[6]

Ultimately, the computational differences were agreed to, but petitioners contend that they should not be responsible for

---

[6]The parties resolved most of the prior years' computational differences irrespective of their views as to whether the Court would have jurisdiction to decide the correct amounts if the parties had disagreed.

the additions to tax[7] and interest for the 1999 tax year.  In addition, petitioners contend that sanctions should be imposed against respondent.  Finally, petitioners have countered respondent's argument that the period of limitations for the 1999 tax year has expired by arguing that either the mitigation provisions or the doctrine of equitable recoupment should be applied.  The global basis for petitioners' contentions is that respondent's errors have caused delays resulting in an increase in interest.

In order to address any of the issues petitioners raise, other than whether respondent should be sanctioned, we must have jurisdiction over the 1999 tax year.[8]  Respondent contends that the Court does not have jurisdiction over the 1999 tax year and, alternatively, if we did have jurisdiction, the period of limitations has expired with respect to a refund claim for petitioners' 1999 tax year.

Before considering the jurisdictional question, we outline the 1999 tax return filing history.  A $4,798.54 overpayment credit from petitioners' 1998 tax year was credited to the 1999 tax year on April 23, 2001.  The 1999 joint Federal income tax

---

[7]We have already decided that petitioners are not liable for the sec. 6651(a)(1) late-filing additions to tax for 2001 and 2002.

[8]We note that petitioners' 1998 tax year was the subject of a case at docket No. 4542-04S, settled in July 2005.

return was filed on August 22, 2003, reflecting a $3,502 balance due. Respondent, however, assessed late-filing and late-payment additions to tax and statutory interest. On September 12, 2005, respondent reduced the amounts of the late-payment additions to tax. No tax remains due for the 1999 tax year. For the 1999 tax year there were late-filing and late-payment additions to tax of $767.25 and $221.65, respectively, and accrued interest of $361.69. Petitioners have asked the Court to abate or eliminate these amounts.

Before we can consider the merits of petitioners' arguments, we must decide whether we have jurisdiction over the 1999 tax year. Under certain circumstances the Court may consider the merits of an earlier year and its effect on the year(s) before the Court. One such example is where carryover losses are in issue. However, petitioners were not entitled to petition the underlying merits of their 1998 tax year, which was the subject of prior litigation that has become final. The notice of deficiency upon which this case is based contained determinations for petitioners' 2001 and 2002 tax years. To the extent that prepayment credits and/or overpayments from 1998 to 1999 could have any effect on the years before the Court, the parties have resolved those differences and amounts. Accordingly, we lack jurisdiction over the merits of the 1998 or 1999 tax year. See, e.g., Normac, Inc. v. Commissioner, 90 T.C. 142, 146 (1988).

Having decided that we lack jurisdiction over the 1999 tax year, we need not address whether the period of limitations expired or whether mitigation or estoppel applies.

Lastly, petitioners contend that respondent should be sanctioned because of errors resulting in delays that occurred during the processing of all of the tax years 1998, 1999, 2001, and 2002. Although there were processing errors, petitioners' late filing and holding of refund checks compounded and/or contributed to the problems and complexity in the administrative process. Ultimately, respondent's counsel and petitioners have worked together and resolved the liabilities, credits, and overpayments from one year to another. Under these circumstances, we hold that sanctions are not warranted.

To reflect the foregoing,

Decision will be entered under Rule 155.