T.C. Memo. 2016-152

UNITED STATES TAX COURT

CAROLYN ROGERS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11903-14.                    Filed August 15, 2016.

<u>Frank Agostino</u>, <u>Brian D. Burton</u>, <u>Catherine Engell</u>, and <u>Kathryn Keneally</u>, for petitioner.

<u>Mimi Wong</u>, <u>Lyle B. Press</u>, and <u>Rebekah A. Myers</u> for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency in income tax and additions to tax as follows:

**[*2]**                                                    Additions to tax

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
|------|-----------|-----------------|-----------------|--------------|
| 2009 | $13,658 | $3,073 | $2,936 | $327 |

After concessions, the issues for decision are:

1. Whether petitioner's failure to timely file a 2009 income tax return was due to reasonable cause and not willful neglect pursuant to section 6651(a)(1).[1] We hold that petitioner's failure to timely file was due to reasonable cause and not willful neglect.

2. Whether petitioner's failure to timely pay income tax for 2009 was due to reasonable cause and not willful neglect pursuant to section 6651(a)(2). We hold that petitioner's failure to timely pay income tax for 2009 was due to reasonable cause and not willful neglect.

FINDINGS OF FACT

Petitioner resided in New York when she filed the petition. Petitioner was age 64 in 2009.

---

[1]Section references are to the Internal Revenue Code as amended and in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

**[*3]** A.        Fires in Petitioner's Apartment in 2006 and 2007

During 2006 petitioner resided in an apartment in a cooperative.  She

operated a business from her apartment, called Talk of the Town Singles, that

assisted single people who wished to meet other singles.

A fire in petitioner's apartment on November 25, 2006 (2006 fire), damaged

the living room, the kitchen, and a walk-in closet.  After that fire petitioner moved

out of her apartment, which the fire had made uninhabitable.   Petitioner did not

conduct her home business after the 2006 fire because she no longer had a home

office or the necessary storage space.

A second fire damaged petitioner's entire apartment on March 27, 2007

(2007 fire).  At the time of the 2007 fire petitioner was in the apartment working

by candlelight packing items to be put into storage.  Shortly after the 2007 fire, the

New York City Department of Buildings barred her from reoccupying her

apartment until it was declared safe by the department.  The local newspaper

printed a negative article about petitioner describing her involvement in the fires.

Subsequently she was harassed by people in her neighborhood.

B.     Petitioner's Insurance Coverage and Claim

Petitioner was insured by Liberty Mutual at the times of the 2006 fire and

the 2007 fire.  She received $21,469 in payment of her claim for damages for the

[*4] 2006 fire. Petitioner notified the insurance company a day or two after the 2007 fire that damage had occurred. In July 2007 she gave the insurance company a list of destroyed or damaged personal property. Petitioner estimates that her losses from the 2007 fire exceeded $150,000. In 2009 petitioner received $43,964 in payment of her claim for damages for the 2007 fire.

C.    Petitioner's Circumstances From November 2006 Through April 2010

Petitioner lived with an acquaintance from November 2006 to November 2007. From November 2007 to April 2010 she rented a very small room (with shared kitchen and bath facilities) at a Young Women's Christian Association (YWCA). While living at the YWCA petitioner had considerable difficulty dealing with the YWCA board and with several other residents. On occasion the police were called to resolve conflicts. Petitioner found living under those conditions to be dehumanizing.

After the fires petitioner experienced bouts of depression. Around February 2009 petitioner fell off a subway platform and hit her head on the subway rails, fracturing her skull. After her fall petitioner spent five days in a hospital in the intensive care unit. Medical personnel were with her continuously while she was in the hospital. While there, petitioner was interviewed by a psychiatrist regarding the circumstances of her fall onto the subway tracks. Otherwise, she has not seen

**[\*5]** a doctor for emotional conditions.  Petitioner suffered from dizzy spells after her fall.

D.    Tax Returns

Petitioner prepared and timely filed Forms 1040, U.S. Individual Income Tax Return, for tax years 2006, 2007, and 2008.  Petitioner knew at relevant times that tax returns are due on April 15 of the following year in the absence of an extension; that if there is an extension, then the tax return is due on October 15 of the following year unless that date falls on a weekend or holiday; and that no return is required if the taxpayer's income for the year is below minimal amounts.

Generally, petitioner made significant efforts to correctly prepare her income tax returns.  She consulted books and electronic sources describing tax rules she thought applied to her, and she sometimes contacted the Internal Revenue Service for information.  Petitioner did not have an accountant or use the services of tax preparers to prepare her tax returns.

2007 and 2008 returns.  Petitioner did not claim a casualty loss deduction relating to the 2007 fire on her 2007 or 2008 Federal income tax return.  When she filed those returns she erroneously believed that her casualty loss was not deductible until her insurance claim was settled.  For taxable year 2008 petitioner paid $158 of tax due as reported on her Federal income tax return.

**[\*6]**  2009 return.  Petitioner did not file a Form 1040 for 2009.  Petitioner believed that, after taking into account her deductible casualty loss, she was not required to file an income tax return for 2009.

On November 12, 2013, respondent prepared a substitute for return for petitioner's 2009 tax year pursuant to section 6020(b).  For 2009 respondent prepared a Form 13496, IRC Section 6020(b) Certification, and attached the documents referenced by that form.

E.  Settlement of the Casualty Loss Issue

After filing the petition, petitioner met with respondent in an effort to settle the case.  Petitioner realized that she had erred regarding the year of deduction of her casualty loss, and she settled that issue except for the additions to tax at issue here.

OPINION

The issues for decision are whether petitioner is liable for an addition to tax for failure to timely file under section 6651(a)(1) and an addition to tax for failure to timely pay under section 6651(a)(2).

A.  Failure To File

Section 6651(a)(1) imposes an addition to tax for failure to timely file a required tax return.  Section 7491(c) places on the Commissioner the burden of

[*7] producing evidence of liability for additions to tax.  To meet that burden, the Commissioner must produce evidence showing that it is appropriate to impose that particular addition to tax, but the Commissioner need not produce evidence relating to defenses such as reasonable cause or substantial authority.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001); H.R. Conf. Rept. No. 105-599, at 241 (1998), 1998-3 C.B. 747, 995.  Respondent has met the burden of production with respect to this addition to tax because petitioner was required to timely file but did not file a return for 2009.[2]

Once the Commissioner meets the burden of production, the taxpayer must, in order to avoid liability for additions to tax, produce evidence that the Commissioner's determination is incorrect; e.g., that the failure was due to reasonable cause and not willful neglect.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985); Higbee v. Commissioner, 116 T.C. at 446; H.R. Conf. Rept. No. 105-599, supra at 241, 1998-3 C.B. at 995.  Reasonable cause exists if the taxpayer exercised ordinary business care and prudence but nevertheless could not file or pay the tax when due.  Boyle, 469 U.S. at 246; Bank of the West v. Commissioner, 93 T.C. 462, 471 (1989).  "[W]illfull neglect" means a "conscious,

_____

[2]The record establishes that petitioner's income exceeded the income threshold for nonfilers for 2009.  See sec. 6012(a)(1).

[*8] intentional failure or reckless indifference." Boyle, 469 U.S. at 245. The delay is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. See sec. 1.6651-1(c)(1), Income Tax Regs. Petitioner correctly handled her tax filings and payments before 2009. Petitioner testified that her losses from the 2007 fire exceeded $150,000. She also testified that she believed her loss was deductible for the year she settled the insurance claim and that her casualty loss (to the extent not compensated by insurance) more than offset her 2009 income, obviating the requirement that she file a 2009 return.

We have found taxpayers liable for the failure to timely file addition to tax where the taxpayer was functioning at a very high level in a business endeavor, Judge v. Commissioner, 88 T.C. 1175 (1987); Henningsen v. Commissioner, 26 T.C. 528 (1956), aff'd, 243 F.2d 954 (4th Cir. 1957); Joyce v. Commissioner, 25 T.C. 13 (1955); Watts v. Commissioner, T.C. Memo. 1999-416; Wright v. Commissioner, T.C. Memo. 1998-224, aff'd 173 F.3d 848 (2d Cir. 1999), and where the taxpayer's failure to file, late filing, or late payment of tax was chronic, Judge v. Commissioner, 88 T.C. 1175; Ruggeri v. Commissioner, T.C. Memo. 2008-300; Joye v. Commissioner, T.C. Memo. 2002-14. We have also found taxpayers not liable for the addition to tax for failure to timely file where illness or

**[*9]** family hardship effectively prevented timely filing of a tax return. <u>Tabbi v. Commissioner</u>, T.C. Memo. 1995-463; <u>Harris v. Commissioner</u>, T.C. Memo. 1969-49. Those cases are instructive but not controlling because the result in each case depends on all of the facts and circumstances.

One of the facts and circumstances meriting consideration here is precisely what the error was that petitioner made which led her to believe she was not required to file a 2009 return. That error related to the question of the proper timing of her casualty loss deduction resulting from the 2007 fire. At the time her 2009 return was due, petitioner believed the loss was deductible for 2009 because that was the year her claim was resolved. If an insurance claim is not paid in the year of the loss and the taxpayer has a reasonable prospect of recovery, the deduction for the loss is deferred until it can be ascertained whether such reimbursement will be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs. However, if or to the extent there is no reasonable prospect for compensation for the loss through insurance, the loss is deductible for the year incurred. Sec. 165(a); sec. 1.165-1(d)(2)(ii) and (iii), Income Tax Regs. The parties' settlement of this issue suggests that there was no reasonable prospect of recovery of a portion of the loss under petitioner's insurance policy.

**[\*10]** Petitioner's error (regarding the proper year of deduction of the portion of a casualty loss for which there is no prospect of recovery from insurance) is considerably different from the errors made by a taxpayer whose failure to file, late filing, or late payment is chronic. Erroneously deducting a loss in a year later than the correct year is not usually considered to be a blatant tax avoidance technique, especially compared with chronic failure to file tax returns.

Petitioner's life was in a state of upheaval after the second fire and through the period when the return was due. She was barred from reoccupying her apartment and, during the times relevant to the 2009 return, she was living under conditions she found to be dehumanizing at a YWCA; later, she experienced bouts of depression, a fall from a subway platform in 2009, and a skull fracture. She was subject to continuous monitoring and psychiatric examination while hospitalized. She did not resume conduct of the business she had operated from her apartment (Talk of the Town Singles). Her living conditions and the resulting bouts of depression make reasonable her not understanding the correct year of deduction.

Taking into account all of the facts and circumstances, we conclude that petitioner exercised ordinary business care and prudence under the difficult circumstances in which she was living at the time leading up to the due date of her

**[*11]** 2009 return and that her error (claiming a deduction for a year later than the current year) did not constitute a conscious, intentional failure or reckless indifference to her tax filing obligations for 2009.

B.     Failure To Pay

Section 6651(a)(2) provides for an addition to tax where there is a failure to timely pay the amount of tax shown on a return. A substitute for return properly prepared by the Secretary under section 6020(b) is treated as the return filed by the taxpayer for purposes of determining an addition to tax under section 6651(a)(2). Sec. 6651(g)(2). The 2009 substitute for return meets the requirements of section 6020(b).

Respondent has met the burden of production under section 7491(c) by producing evidence showing that petitioner was required to but did not timely pay tax for 2009. Thus, to prevail, petitioner must show that her failure to timely pay was due to reasonable cause and not willful neglect. The reasonable cause standard under section 6651(a)(2) is given an analysis similar to that under section 6651(a)(1). See Russell v. Commissioner, T.C. Memo. 2011-81, slip op. at 22 ("The Court's analysis in Boyle addressed penalties for failure to file tax returns under section 6651(a)(1). The language concerning the standard for failure to file a return is identical to the language in sections 6651(a)(2) and 6656 for failure to

**[\*12]** pay and to deposit.  We see no reason why the Court's analysis under section 6651(a)(1) should not guide our analysis of sections 6651(a)(2) and 6656." (quoting E. Wind Indus., Inc. v. United States, 193 F.3d 499, 504 n.5 (3d Cir. 1999))); see also Fran Corp. v. United States, 164 F.3d 814, 816 n.2 (2d Cir. 1999) ("While the analysis in Boyle addressed penalties for failure to file a return under section 6651(a)(1) and not for a failure to pay or deposit taxes under section 6651(a)(2) or section 6656, the language concerning the standard is identical in all three provisions.  Unless otherwise noted, therefore, we shall inform our analysis of sections 6651(a)(2) and 6656 with those precedents that address section 6651(a)(1)."); Valen Mfg. Co. v. United States, 90 F.3d 1190, 1193 n.1 (6th Cir. 1996) (same).

Therefore, for the reasons stated above in our discussion of the addition to tax under section 6651(a)(1), we hold that petitioner is not liable for the addition to tax under section 6651(a)(2) for failure to pay timely the tax due for 2009.

To reflect the foregoing,

Decision will be entered under Rule 155.