J. H. SCHROEDER AND MARLYS E. SCHROEDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schroeder v. Commissioner
Docket No. 26539-86.
United States Tax Court
T.C. Memo 1989-110; 1989 Tax Ct. Memo LEXIS 110; 56 T.C.M. (CCH) 1480; T.C.M. (RIA) 89110; March 21, 1989. J. H. Schroeder and Marlys E. Schroeder, pro se. Cynthia J. Olson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency and additions to tax in the joint income tax liability of petitioners J. H. Schroeder and Marlys E. Schroeder, husband and wife, for the calendar year 1982 in the following amounts: Increase
Additions to Tax, Sections
Year
in Tax
6661 [1]
6653(a)(1)
6653(a)(1)
6621(d)
1982
$ 19,774.40
$ 1,977.44
$ 988.72
*
*
* See the back of waiver for statement regarding additional amount of negligence penalty for tax year 1982. * See the back of waiver for *118 statement regarding additional amount of interest under IRC section 6621(d). [2]
In an amendment to his answer to the petition, respondent alleged that petitioners were not entitled to use the tax rates applicable to married persons filing jointly and that J. H. Schroeder (Mr. Schroeder or petitioner) was liable for the following deficiency and additions to tax for the taxable year 1982: Additions to Tax, Sections
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
6661
1982
$ 26,163
$ 6,541
$ 1,308
*
$ 2,547
$ 2,616
*119 In the alternative, respondent alleged that petitioner, Marlys E. Schroeder (Mrs. Schroeder), was liable for the following deficiency and additions to tax for the taxable year 1982: Additions to Tax, Sections
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
6661
1982
$ 26,503
$ 6,626
$ 1,325
*
$ 2,580
$ 2,650
After disposition of certain issues or items by agreement of the parties, the issues for decision are: (1) whether respondent timely filed his answer to petitioners' petition; (2) whether respondent may claim increased deficiencies and additions to tax in an amendment to his original answer; (3) whether petitioners filed a valid joint Federal income tax return for the year 1982; (4) whether petitioners are entitled to have their income tax liability computed using the rates applicable to married persons who file jointly; (5) whether respondent was justified in computing petitioners' 1982 gross income by using income reported on returns for purported trusts with fiscal years ending February 28, 1983; (6) whether petitioners *120 are entitled to deductions and credits for their 1982 taxable year in excess of those allowed by respondent; (7) whether petitioners are entitled to a net operating loss carryover to their 1982 taxable year; (8) whether petitioners are entitled to an investment tax credit carryover to their 1982 taxable year; (9) whether petitioners are entitled to take advantage of the income averaging provisions (sections 1301 through 1305); (10) whether Mr. Schroeder is liable for self-employment tax on the income he earned in 1982; (11) whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a)(1), 6653(a)(2), 6654, and 6661; and (12) whether the United States should be awarded damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Littleton, Colorado at the time of the filing of the petition in this case. Petitioners are the same individuals who were before this Court in Schroeder v. Commissioner,T.C.Memo. 1986-467 (appeal filed May 26, 1987), involving the years 1978, 1979 and 1980, and Schroeder v. Commissioner,T.C.Memo. 1986-583 (appeal filed *121 July 7, 1987, appeal dismissed April 21, 1988), involving the year 1981. During 1982, Mr. Schroeder was engaged in the business of selling cookware and certain other items through a sole proprietorship known as Loup Valley Cookware. He also derived income from several rental properties. Petitioner claimed to have conducted these activities through three trusts: the J. H. Schroeder Family Trust; the Loup Valley Cookware Trust; and the Meds Leasing Trust. The parties have stipulated that these entities should not be respected for Federal income tax purposes and that all income and expenses of the business purportedly conducted through the three trusts are properly attributable to Mr. Schroeder. [3] The parties have also stipulated that Mrs. Schroeder had no income or expenses for the 1982 calendar year. Mr. Schroeder also engaged in several other activities during 1982. Mr. Schroeder was a licensed (although unordained) minister and received income from the performance of his *122 ministerial duties. He was also the founder and leader of an organization known as the Restoration Evangelist Trust. The Restoration Evangelist Trust is listed in I.R.S. Publication No. 78 as an exempt charitable organization, a contribution to which is deductible under section 170. Mr. Schroeder had signature authority over the bank account of the Restoration Evangelist Trust. Mr. Schroeder sold an unspecified amount of exercise equipment in 1982 and sold sales catalogs and membership kits for an entity known as Nova's General Store. Mr. Schroeder also bought and sold coins at cost in 1982 as an accommodation to friends and acquaintances. Although Mr. Schroeder was an Amway salesman during 1982, he purchased Amway products strictly for his own use. During 1982, Mr. Schroeder and two other individuals, Andrew Kaminski and Terry Smith, attempted unsuccessfully to purchase the midwest distribution rights for Nova's General Store. Mr. Schroeder and Mr. Kaminski, prior to 1982, had been salesmen for Educational Scientific Publishers, an organization which sold family trust packages. Mr. Kaminski was enjoined by the State of Colorado from selling the trust packages within its *123 borders. Although Mr. Schroeder did not sell any trust packages during 1982, he attended several seminars in which he and his associates attempted to render assistance to those persons who had purchased family trust packages and were under investigation by the Internal Revenue Service. Mr. Schroeder did not keep books of account for the various business activities in which he was engaged. All of Mr. Schroeder's business records (i.e., sales contracts, purchase contracts, or invoices), other than canceled checks, credit card receipts, and cash receipts, have been destroyed. Mr. Schroeder had several checking accounts which he maintained with the Ericson State Bank in the names of the various trusts. Both Mr. Schroeder's business and personal expenses were paid through these checking accounts and, in most instances, no attempt was made to segregate his personal from his business expenses. Mr. Schroeder and Mrs. Schroeder also maintained a personal checking account with the State Bank of Riverdale. Both business and personal expenses were paid through this checking account. Again, no attempt was made to segregate business from personal expenses. Petitioners filed a Form 1040 *124 individual income tax return for the calendar year 1982. On this form, petitioners elected "married filing joint return" status. The Form 1040 disclosed an overall loss of $ 836.40 and petitioners claimed a refund of $ 183.00 based on a claimed earned income credit. Petitioner also claimed exemption from the social security self-employment tax. Petitioners made no payments of estimated tax for 1982. Although the Form 1040 was signed by both petitioners, the language within the jurat which stated that the return was signed under penalty of perjury was obliterated. Forms 1041 fiduciary income tax returns for the fiscal year ending February 28, 1983, were filed on behalf of the Loup Valley Cookware Trust and the J. H. Schroeder Family Trust by Shannon Schroeder, petitioner's brother and a trustee of both trusts. The profit and loss schedules attached to the Forms 1041 filed on behalf of the Loup Valley Cookware Trust and the J. H. Schroeder Family Trust state that the trusts' main business activities are the sale of cookware and rentals, respectively. No other business activities are mentioned. Each return discloses an overall loss for the trusts' fiscal year ending February 28, 1983. *125 Although the returns are signed by Shannon Schroeder, the language within each jurat which states that each return is signed under penalty of perjury is obliterated. On the Form 1041 filed for the Loup Valley Cookware Trust for its fiscal year ending February 28, 1983, the amount of $ 69,761.55 was reported as gross receipts and was reduced by $ 813.72 of returns and allowances, leaving a balance of $ 68,947.83. The reported gross receipts included receipts from sales of cookware, sales of some exercise equipment, and sales of kits and catalogs of Nova's General Store. It did not include any sales of coins. Costs of goods sold on the Form 1041 were shown as $ 60,317.26 and other deductions were claimed of $ 14,928.04, resulting in a loss from the business of $ 6,297.47. On the Form 1041 filed for the J. H. Schroeder Family Trust for its fiscal year ending February 28, 1983, the amount of $ 9,535.55 was reported as gross receipts and was reduced by $ 137.94 of returns and allowances, leaving a balance of $ 9,397.61. Expenses of $ 10,056.51 were reported, resulting in a loss of $ 658.90. The cost of the Nova membership kits and catalogs sold by petitioner in 1982 was $ 12,407.21 *126 and the cost of the miscellaneous items other than the cookware and Nova items sold by petitioner in 1982 was $ 445.72. Returns and allowances with respect to petitioner's sales amounted to $ 1,147.39. Petitioners paid shipping and postage expenses in connection with the sales of Nova membership kits and catalogues, cookware items and miscellaneous items in 1982 of $ 631.03 and photostat expenses of $ 40.10. During 1982 petitioner paid telephone charges of $ 874.02 in connection with his business income producing activities. Petitioners made deductible charitable contributions in 1982 in the amount of $ 3,657.41. Petitioners made deductible interest payments in 1982 in the amount of $ 4,944.09. Petitioners are entitled to a deduction for taxes paid in 1982 of $ 797.36. In 1982, petitioners spent $ 633.24 for doctor bills and $ 6.42 for pharmaceuticals, which are deductible, subject to the limitations of sections 213(a) and (b). Petitioners are entitled to deduct miscellaneous business expenses in connection with their cookware sales, Nova kit sales and rental properties in the amount of $ 738.93. Petitioner made political contributions to a local branch of a national *127 party and to a candidate for state office totaling $ 55.00. Petitioners are each entitled to a personal exemption deduction and are entitled to personal exemption deductions for four of their children. The statutory notice of deficiency in this case was issued by respondent on April 11, 1986. Respondent in his notice of deficiency increased petitioners' income as reported on the Form 1040 filed for the year 1982 by $ 58,654.66. This increase was computed as follows: Gross receipts - sale of cookware
$ 69,761.55 Gross receipts - rental property
9,535.55 Cost of goods sold - sale of cookware
(20,642.44)
Total adjustments
58,654.66 In the notice of deficiency, a loss of $ 836.40 was listed as the amount shown on the "Return as filed" and "Taxable income as revised" was shown as $ 57,818.26. "Self-employment income subject to self-employment tax" was shown as $ 32,400.00 with self-employment tax computed as $ 3,029.40. In the notice of deficiency, respondent determined that petitioners were liable for additions to tax under sections 6661, 6653(a)(1), 6653(a)(2) and 6621(d). On July 7, 1986, petitioners filed their petition for redetermination *128 of the deficiency with this Court. Petitioners requested that the trial take place in Denver, Colorado. The petition was served on respondent by the Clerk of the United States Tax Court on July 22, 1986. Respondent's answer was mailed on September 11, 1986, and was received by this Court on September 15, 1986. Petitioners' response to respondent's answer was filed with this Court on September 25, 1986, and was served on respondent on October 3, 1986. On November 14, 1986, respondent filed a motion for leave to amend his answer. Respondent's motion was granted over petitioners' objections and respondent's amendment to his answer was filed on January 14, 1987. In the amendment to answer, respondent asserted that petitioners had not filed a valid income tax return for 1982 because the perjury oath had been obliterated. Consequently, respondent asserted that petitioners had not made a valid election of joint filing status, that each petitioner's tax liability should be computed on the basis of a married person filing a separate return, that petitioners were liable for additions to tax under section 6651(a)(1) for failure to file a return for 1982, and that petitioners were liable *129 for additions to tax under section 6654 for failure to make estimated tax payments. In this amendment to answer, respondent also claimed increased additions to tax under section 6653(a)(1) and (2) and section 6661. On May 26, 1987, this Court issued a notice setting the case for trial on October 26, 1987, in Denver, Colorado. The notice was sent by this Court to petitioners' mailing address in Colorado and was not returned to the Court. OPINION Petitioners first contend that respondent's answer to their petition was filed five days late and, therefore, this Court should not have allowed respondent to file his answer. Rule 36(a) provides that, "The Commissioner shall have 60 days from the date of service of the petition within which to file an answer, * * *." Rule 21(b) provides that, "All petitions shall be served by the Clerk." Petitioners filed their petition in this case on July 7, 1986. The petition was served on respondent by the Clerk of the United States Tax Court on July 22, 1986. Sixty days thereafter is September 21, 1986. Respondent's answer was mailed on September 11, 1986, and was received by this Court on September 15, 1986. Both dates are well within the *130 time allotted by Rule 36(a) and, therefore, petitioners' contention has no merit. Petitioners also contend that it is improper to allow respondent to amend his answer in order to increase petitioners' deficiencies and additions to tax. Instead, according to petitioner, respondent may do so only in an amended notice of deficiency. Section 6214(a) provides that the Tax Court has jurisdiction to redetermine the correct amount of tax owing, even though such amount is greater than that determined by respondent in his notice of deficiency, if respondent claims the increases at or before trial. Under Rule 41(a), respondent may amend his answer by leave of the court and such leave shall be freely granted when justice so requires. Furthermore, section 6212(c) provides that respondent may not determine additional deficiencies when a petition has been filed in this Court except in the case of fraud or as provided in section 6214(a). In this case, respondent sought leave to amend his answer in order to raise new issues when his counsel became aware that petitioners had obliterated the perjury declaration on their income tax return for calendar year 1982. Acting within the bounds of our *131 statutory discretion, we properly allowed respondent to assert additional deficiencies in the only manner statutorily permitted. [4] Therefore, petitioner's contention that respondent must issue an amended notice of deficiency in order to raise new matters is without merit. [5]
*132 Petitioners next contend that their 1982 individual income tax return constituted a valid return, despite their willful obliteration of the declaration which states that the return is signed under penalty of perjury. However, petitioners' contention is contrary to both statutory and case law. Section 6061 provides that, "any return, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." Section 6065 provides that, "any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under penalties of perjury." Petitioners argue that the requirement that returns be signed under penalty of perjury offends their religious sensibilities and, therefore, violates their First Amendment rights. However, the Tenth Circuit Court of Appeals, to which appeal in the instant case would lie, has held that a compelling governmental interest is served by requiring the presence and execution of the perjury clause. *133 Borgeson v. United States,757 F.2d 1071, 1073 (10th Cir. 1985). Thus, petitioners' claim of the protection of the First Amendment is without merit. It has been held in a number of cases that a return must be signed by the taxpayer and contain a perjury clause in order to constitute a valid return. Lucas v. Pilliod Lumber Co.,281 U.S. 245 (1930); Borgeson v. United States, supra;United States v. Moore,627 F.2d 830 (7th Cir. 1980); Cupp v. Commissioner,65 T.C. 68 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). In the instant case, petitioners' obliteration of the language which stated that their return was signed under penalty of perjury caused the 1982 return which they filed to be invalid.[6] Therefore, petitioners have not filed a valid individual income tax return for their calendar year 1982. The fiscal year 1983 returns filed on behalf of the Loup Valley Cookware Trust and the J. H. Schroeder Family Trust, if otherwise of any consequence, are invalid for the same reason. *134 Petitioners next claim that, despite the fact that the 1982 return on which they elected joint filing status was invalid, they are entitled to have their deficiency computed in accordance with the tax rates applicable to married persons filing jointly. At the same time, they claim Mrs. Schroeder should not have been named in the joint deficiency notice nor have been charged with any Federal income tax liability, despite the fact that she attempted to file jointly with her husband. Petitioners apparently see no inconsistency in these positions since they do not maintain them alternatively. Respondent contends that petitioners are not entitled to joint filing status since the return on which they elected such status is invalid. Respondent, in effect, contends that his allegation in his amendment to answer that petitioners' deficiency should be computed as if they filed separately preempts any claim by petitioners that they are entitled to joint filing status. Respondent admits that, if we agree with his contention that petitioners are not entitled to joint filing status, Mrs. Schroeder is not liable for any portion of the deficiency or additions to tax since none of the income *135 and deductions at issue are attributable to her. Section 1(a) provides the tax rates which are applicable to every married individual who makes a single return jointly with his spouse under section 6013. Section 6013(a) provides that, with certain exceptions not applicable here, a husband and wife may file a single return jointly even though one of the spouses has neither gross income nor deductions. Section 1(d) provides the tax rates which are applicable to married individuals who file separate returns. Section 6013(b)(1) permits married taxpayers, who have previously reported their income for any particular year on separate returns, to thereafter take advantage of the joint filing rates by simply filing a joint return for such year. However, under section 6013(b)(2)(B), a subsequent joint return cannot be filed more than three years after the date the return for a particular year would normally be due. Furthermore, under section 6013(b)(2)(C), if respondent has issued a notice of deficiency to either spouse with respect to the year in which separate returns were originally filed and such spouse files a petition with this Court to redetermine the deficiency, taxpayers may *136 not thereafter file a joint return even though such filing would otherwise be permitted under section 6013(b)(1). In Thompson v. Commissioner,78 T.C. 558 (1982), we held that the taxpayers, husband and wife, were not entitled to joint filing status. The taxpayers had never attempted to file valid returns on which they could have claimed joint filing status and respondent issued separate notices of deficiency in which he calculated their deficiencies based on rates applicable to married persons filing separate returns. We first noted that a joint return must be filed in order for the joint filing rates provided in section 1(a) to be applicable. We then stated that: If taxpayers have failed to file returns, the election to make a joint return may not be made after the respondent has issued a notice of deficiency to either spouse based on rates for separate returns, and the spouse to whom such notice was issued has filed a petition with this Court. [Citations omitted.] Thompson v. Commissioner, supra at 561. Our holding in Thompson v. Commissioner, supra, was approved of by the Sixth Circuit Court of Appeals in Morgan v. Commissioner,807 F.2d 81 (6th Cir. 1986), *137 affg. a Memorandum Opinion of this Court. In Durovic v. Commissioner,54 T.C. 1364 (1970), affd. 487 F.2d 36 (7th Cir. 1973), we held that section 6013(b)(2)(B) prevented the married taxpayers in that case, who did not attempt to file any tax return for the years 1954 through 1958 until 1965 (well after the three year period provided for in section 6013(b)(2)(B)), from electing joint filing status after respondent issued his notice of deficiency in which he employed separate rates. We have since overruled Durovic v. Commissioner, supra.Phillips v. Commissioner,86 T.C. 433 (1986), affd. 851 F.2d 1492 (D.C. Cir. 1988). In Phillips v. Commissioner, supra, the married taxpayers failed to file returns for the years 1979 through 1981. The Commissioner issued a statutory notice of deficiency based on married filing separately rates. The taxpayers thereafter filed a petition with this Court and attempted to file joint income tax returns for the years at issue. We ruled that the taxpayers were entitled to elect joint filing status, despite the issuance of a statutory notice of deficiency based *138 on married filing separately rates, because the limitations of section 6013(b)(2) applied only where a return, on which separate filing status is claimed, had been previously filed. Phillips v. Commissioner, supra at 440. We explicitly overruled our holding in Durovic v. Commissioner, supra.Phillips v. Commissioner, supra at 441. In Phillips v. Commissioner, supra, respondent had also argued that separate "dummy" returns, which the Commissioner had filed on behalf of the taxpayers, were substitute returns within the meaning of section 6020(b). The Commissioner claimed that these substitute returns could serve as separate returns of taxpayers which would, in turn, bring the provisions of section 6013(b)(1) and the limitations of section 6013(b)(2) into play. Section 6020(b)(1) authorizes the Secretary to file a substitute return on behalf of any taxpayer if that taxpayer fails to make a return or files a false or fraudulent return. Section 6020(b)(2) provides that such a substitute return is prima facie good and sufficient for all legal purposes. Because we rejected the argument that the "dummy returns" prepared *139 by the Commissioner were section 6020(b) substitute returns, we did not reach the question of whether a section 6020(b) return could constitute a separate return within the meaning of section 6013(b)(1). In Smalldridge v. Commissioner,804 F.2d 125 (10th Cir. 1986), affg. a Memorandum Opinion of this Court, the married taxpayers did not file any return for the years 1977 through 1981. The Tenth Circuit found that the Commissioner had made substitute returns for such years, pursuant to his authority under section 6020(b), and that he elected married filing separately status on behalf of the taxpayers. The Commissioner then issued notices of deficiency based on married filing separate rates. The taxpayers filed a petition in this Court and subsequently filed Federal income tax returns for the years at issue in which they claimed joint filing status. The Tenth Circuit held that the section 6020(b) returns filed on behalf of the taxpayers constituted separate returns within the meaning of section 6013(b)(1). The court reasoned that the taxpayers were precluded by section 6013(b)(2)(C) from thereafter filing a joint return since separate returns had been filed, *140 the Commissioner had issued his statutory notice of deficiency, and the taxpayers had filed a petition for redetermination with this Court. Smalldridge v. Commissioner, supra at 128. [7]
The instant case is distinguishable from Smalldridge v. Commissioner, supra, because in that case the Commissioner filed separate section 6020(b) returns on behalf of the taxpayer so that the prerequisite (filing of separate *141 returns) to the application of section 6013(b) was in place while, in the instant case, respondent has filed no such returns. Furthermore, unlike the taxpayers in Smalldridge v. Commissioner, supra, petitioners have made no subsequent attempt to elect joint status in a valid return. The instant case is also distinguishable from Phillips v. Commissioner, supra for the very same reason. The taxpayers have not, prior to submission of this case for decision, attempted to file a valid return on which they claim joint filing status for 1982 although they adamantly claimed the use of the married filing jointly rates at the trial and on brief. Thus, factually the instant case is more comparable to Thompson v. Commissioner, supra.
However, Thompson v. Commissioner, supra, is distinguishable, along with Smalldridge v. Commissioner, supra, and Phillips v. Commissioner, supra, on the grounds that, in all three of those cases, the statutory notice of deficiency was issued based on the rates applicable to married individuals filing separately. [8] In the instant case, respondent issued *142 a notice of deficiency to petitioners jointly using the married filing jointly rates, thereby conceding at least at the outset, that petitioners were entitled to compute their taxes based on the married filing jointly rates. In effect, respondent made the election for petitioners to which he now claims they are not entitled. It was only after respondent's counsel discovered during her preparation of this case for trial that petitioners had not filed valid 1982 returns, that respondent attempted to compute petitioner's deficiency on the basis of married filing separately rates. This raises the question of whether respondent should be bound by the joint filing status he selected in his notice of deficiency where petitioners have made no attempt to file either valid joint returns or valid separate returns. *143 We note initially that, if respondent had selected separate filing rates in his notice of deficiency, and petitioners had made no attempt to file valid joint returns, petitioners could not contest respondent's selection in this Court under section 6013(b)(2)(C), as interpreted in Thompson v. Commissioner, supra. We see no reason, in this case, why respondent should not be similarly bound to the initial selection he, himself, made. Petitioners may well have filed their petition with this Court, and thereby foregone the opportunity to file joint valid returns under section 6013(b) (which they may have been entitled to do under Phillips v. Commissioner, supra, since respondent did not file section 6020(b) substitute returns on their behalf) on the assumption that respondent would compute their deficiency based on joint filing rates. Respondent argues that the joint notice of deficiency gave both petitioners notice of the deficiency which had been determined against them. Respondent further contends that the switch to separate rates in the amendment to his answer did not invalidate the entire notice of deficiency but simply placed the burden *144 of proof on respondent to prove that petitioner had not elected joint filing status on a valid return, a burden which respondent has admittedly met. Respondent's argument misses the mark. By ruling that respondent is bound by his selection of joint filing rates in his statutory notice of deficiency, we are not ruling that the notice of deficiency is invalid. Quite the opposite is true. We are giving full effect to respondent's notice of deficiency. We are simply requiring respondent to be bound by the joint filing rates selected for a particular year in his own notice of deficiency in those situations where the married taxpayers file a petition for redetermination with this Court in which they do not contest respondent's selection of the married filing jointly rates but in fact claim such rates. We hold that petitioners' income tax liability should be computed as if petitioners validly elected joint filing status. We note that, in light of this holding, which is in accordance with petitioners' contentions, Mrs. Schroeder will be jointly liable for any deficiency or additions to tax which we may determine since she will be treated as having elected joint filing status with Mr. *145 Schroeder. Petitioners next contend that respondent erred in computing their gross income for 1982. Respondent reconstructed petitioners' 1982 gross receipts and income from figures shown on the various invalid returns filed by petitioners and their trusts. Specifically, respondent combined the gross receipts reported on the J. H. Schroeder Family Trust Form 1041 for its fiscal year ending February 28, 1983, and the gross receipts reported on the Loup Valley Cookware Trust Form 1041 for its fiscal year ending February 28, 1983, with the loss shown on petitioners' individual income tax return for the calendar year ending December 31, 1982. Respondent reduced these gross receipts by a portion of the cost of goods sold reported on the Loup Valley Cookware Trust Form 1041 which he determined to be the cost of sales of cookware, but allowed none of the business expense deductions claimed on either the J. H. Schroeder Family Trust Form 1041 or the Loup Valley Cookware Trust Form 1041. Although petitioners concede that all income and deductions of the trusts are actually attributable to Mr. Schroeder, they object to respondent's use of the Forms 1041 to reconstruct their 1982 taxable *146 income. Petitioners particularly object to respondent's inclusion in their 1982 taxable income of income which they claim is attributable to the last two months of the trusts' fiscal year (i.e., January and February of 1983) and, therefore, falls outside of petitioners' 1982 calendar year. However, petitioner made no effort to show what income if any from these business activities is attributable to January and February 1982. Presumably this income is not included in the income reported for the fiscal year ending February 28, 1983. Also they did not attempt to show the amount of income for the months of January and February 1983 which they claim should be eliminated. For all this record shows the 1982 income not included may exactly equal the included 1983 income. Respondent's determination of petitioners' deficiency is presumptively correct. Welch v. Helvering,290 U.S. 111, 115 (1933), and Zell v. Commissioner,763 F.2d 1139, 1141 (10th Cir. 1985), affg. a Memorandum Opinion of this Court. Petitioners bear the burden of proving that respondent's determinations are in error, except as to those affirmative matters raised by respondent in his *147 answer or amendments to answer. Rule 142(a). Petitioners have failed to overcome respondent's presumption of correctness as to gross receipts. Section 6001 requires that all persons subject to Federal income tax keep records and comply with the rules and regulations promulgated by respondent. Section 1.6001-1(a), Income Tax Regs., requires each taxpayer to keep permanent books of account or records, including inventories, sufficient to establish the taxpayer's gross income, deductions, credits, etc. Furthermore, a taxpayer is required to retain such books and records so long as their contents are material to the administration of any Internal Revenue law. Section 1.6001-1(b). Petitioners never kept any books of account for their purported business activities. Any business records, such as invoices or contracts, which may have, at one time, been maintained, were advertently or inadvertently destroyed. Respondent's agents repeatedly attempted to meet with Mr. Schroeder and obtain some sort of records from which petitioners' 1982 taxable income and tax liability could be determined. However, each time a meeting was scheduled with any of respondent's agents, Mr. Schroeder failed *148 to appear. [9] According to Mr. Schroeder, he failed to attend some meetings because he was sick. Other times, he simply "goofed." However, the fact remains that petitioners did not provide respondent with anything at all, except Forms 1041 and a Form 1040, from which their 1982 income could be reconstructed. Where a taxpayer does not keep any records from which his actual income can be determined and is totally uncooperative in assisting in respondent's determination of his true income, respondent may use any reasonable method to reconstruct the taxpayer's income. Section 446(b); Holland v. United States,348 U.S. 121 (1954); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977); Giddio v. Commissioner,54 T.C. 1530, 1533 (1970). In our view, the use of income figures *149 supplied by petitioners themselves, albeit on Forms 1041 and 1040 which were not valid returns, is an eminently reasonable and fitting method for computing petitioners' true income. [10] As heretofore pointed out the income from the cookware and miscellaneous sales and from rentals are for a 12-month period and petitioners have not shown that the receipts for January and February 1983 would not be offset entirely by the receipts for January and February 1982.
Petitioners argue, however, that respondent gained access to their banking records for 1982 by way of a summons and, therefore, he should be forced to use the bank deposits method in order to determine their 1982 income. They claim that simply combining their calendar year income with the trusts' fiscal year income is arbitrary and erroneous because they would be forced to account for trust income attributable to 1983 in their 1982 *150 tax year. We cannot agree. Use of the bank deposits method of reconstructing income is not appropriate in every situation and respondent has great latitude in determining a particular taxpayer's tax liability. Giddio v. Commissioner, supra, at 1533-1534. Respondent determined that combining the income shown on the Forms 1041 and Form 1040 would more clearly reflect petitioners' 1982 income than would employing the bank deposits method. This determination was well within his discretion. Section 446(b). In any event, it is by no means clear from the record whether respondent gained or sought access to petitioners' 1982 banking records. Mr. Schroeder stated that he could only recall his 1978, 1979, and 1980 banking records being summonsed. Petitioners made no attempt to introduce their 1982 bank records into evidence at this trial. They also failed to introduce any evidence which would indicate what portion of income, if any, reported on the trusts' returns was actually attributable to 1983. If petitioners hoped to prove that respondent's determination of their gross income was arbitrary and erroneous, it was incumbent upon them to show that a truer and more *151 reasonable picture of their 1982 gross income could be determined. This they failed to do. Therefore, we accept respondent's determination of their gross income. Respondent allowed only a portion of the costs of goods sold reported on the Loup Valley Cookware Trust return as petitioners' cost of goods sold for cookware and did not allow any business expense deductions. Petitioners contend that they are entitled to a higher cost of goods sold and to business expenses and other deductions which were not allowed by respondent. It is unrealistic to assume that a person could operate a sales business without having some business expenses. More importantly, petitioners have proven with evidence they submitted in this case that they are entitled to some deductions other than the cost of goods sold determined by respondent in his notice of deficiency. Respondent, based on the record made at the trial, has conceded some deductions other than the cost of goods sold. Petitioners introduced numerous cancelled checks and receipts at trial. Some of the checks and receipts were obviously from prior or later years. Furthermore, Mr. Schroeder's testimony as to the purpose of some expenditures *152 was vague and contradictory. Because of their failure to maintain accurate records, their failure to properly organize or present their evidence, and their failure to provide the Court with any type of itemized list of claimed expenses on brief, petitioners made the determination of their true cost of goods sold and expenses for 1982 very difficult. However, some of the checks received in evidence, as explained in Mr. Schroeder's testimony, reasonably show that some amounts were paid for goods other than cookware sold in 1982 or for deductible expenses. [11]
*153 Petitioners presented enough credible evidence to establish that Mr. Schroeder was in the business of selling Nova's General Store membership kits through the Loup Valley Cookware Trust and that the receipts from the sale of these kits were included in the gross receipts reported on the Loup Valley Cookware Trust's Form 1041 for its fiscal year ending February 28, 1983. [12] Thus, petitioners are entitled to subtract the amount of substantiated cost of the membership kits sold from their gross receipts. After considering the evidence presented, we conclude that petitioners have established that the cost of the membership kits was $ 12,407.21. [13] Petitioners have established additional miscellaneous costs of goods sold of $ 445.72. Petitioners have also established returns and allowances of $ 1,147.39. *154 Petitioners are entitled to deduct shipping and postage expenses incurred in connection with the sales of Nova membership kits and with the sale of cookware. Petitioners claimed total shipping and postage expenses of $ 946.55. Respondent conceded one-third of this amount on brief. We conclude from the evidence that two-thirds of this figure, or $ 631.03, is a more reasonable figure. Similarly, we conclude from the evidence that it is reasonable to allow petitioners two-thirds, or $ 40.10, of the photostat expenses they claimed. Petitioners are not entitled to deduct any expenses, including air fare and travel expenses, relating to their development of a sales plan and negotiations for distribution rights of Nova's General Store. The expenses paid by petitioners in 1982 in their unsuccessful attempts to purchase, in conjunction with two other persons, the Nova distribution rights for a portion of the United States are qualitatively different from the expenses paid in connection with Mr. Schroeder's job as a mere Nova salesman. The latter are ordinary and necessary expenses paid in connection with an ongoing trade or business, while the former are extraordinary expenditures *155 paid in connection with the investigation of a new business venture. It is well settled that such expenditures are not currently deductible under section 162. Dean v. Commissioner,56 T.C. 895, 902 (1971); O'Donnell v. Commissioner,62 T.C. 781, 785-786 (1974). Cf. section 195. Petitioners are not entitled to deduct the $ 15,000 which Mr. Schroeder alleges he personally transferred to Nova, on behalf of himself and his two colleagues, as a down payment on the distribution rights. We first note that we have serious doubts as to whether such an expenditure was actually made and, if made, whether it was for the purpose claimed by petitioners. [14] However, we need not reach these questions since it is clear from the testimony of Mr. Kaminski that Nova did not completely cease operations until 1983. [15] Only at that time would a purported down payment become irretrievably lost and a possible deduction or capital loss be realized. *156 Petitioners are not entitled to deduct any expenses incurred in connection with their sporadic purchase and resale of coins. Mr. Schroeder candidly admits that he did not engage in such activity for profit and sold the coins at cost as a favor to friends and cookware customers. Therefore, petitioners' sale of coins was not a trade or business within the meaning of section 162 or an activity engaged in for profit within the meaning of section 212 so as to cause expenses (i.e., postage, cost of coin magazine subscriptions, etc.) to be deductible as business expenses or expenditures with respect to a transaction entered into for profit. Zell v. Commissioner,763 F.2d 1139, 1142 (10th Cir. 1985); Leamy v. Commissioner,85 T.C. 798, 807-808 (1985). Petitioners claim that they had no income from the "wash" sales of coins. There is still another reason why petitioners are not entitled to deduct any expenses related to their coin transactions. After evaluating Mr. Schroeder's testimony, the testimony of Shannon Schroeder, and the testimony of the Revenue Agent, as well as other evidence presented at trial, we conclude that no receipts from the coin *157 transactions were reported on any Form 1041 or 1040 filed by petitioners or their trusts. Mr. Schroeder's explanations of the coin transactions were vague, contradictory, and inconclusive. [16] Under these circumstances, we conclude that petitioners did not account for these "wash" sales transactions on the Loup Valley Cookware Trust Form 1041. Since we hold that the gross receipts from the coin transactions were not included on any Form 1041 or Form 1040 filed by the trusts or petitioners, they were not included by respondent in petitioner's gross income and petitioners are not entitled to subtract from their gross receipts, as determined by respondent, the cost of the coins they sold. *158 Mr. Schroeder testified that he used one and one-half rooms of his ten-room home as an office out of which he conducted his various business enterprises. He did not testify the extent to which this space was used for his business activities as compared to personal activities. The record is not sufficient to show that petitioner is entitled to any home office expense deduction. Mr. Schroeder testified that he had only one telephone in his house which was used for both personal and business calls. Many of the claimed business calls were related to new ventures which Mr. Schroeder explored but never pursued or were related to Mr. Schroeder's coin transactions. However, the record does show that this telephone was used partially for business calls of income-producing activities and that some long-distance calls were made in connection with petitioner's income-producing activities. Using our best judgment of the business use of the telephone based on this imprecise record, we conclude that petitioner is entitled to a business expense deduction for telephone expenses of $ 874.02. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). During 1982, petitioners made *159 numerous contributions to several claimed religious organizations totaling, in the aggregate, $ 4,422.16. In his notice of deficiency, respondent determined that petitioners were not entitled to any charitable deductions. On brief, respondent concedes that petitioners are entitled to deduct $ 282.41 as charitable contributions. However, respondent contends that petitioners are not entitled to deduct the $ 3,375 they contributed to the Restoration Evangelist Trust. [17]
*160 Respondent notes that Mr. Schroeder was the founder of the Restoration Evangelist Trust (the Trust) and had signature authority over its bank account. He also points out that several persons, including Mr. Kaminski, who were involved in the sale of family trust kits, were, at one time or another, on the Trust's board of directors. Finally, he points to Mr. Schroeder's testimony at trial that some of the Trust's earnings may have been used to pay petitioners' personal expenses. Respondent then argues that, despite the exemption granted to the Restoration Evangelist Trust as shown in I.R.S. Publication No. 78, the deductions should not be allowed to petitioners because a portion of the Trust's net earnings inure to the benefit of an individual (Mr. Schroeder) within the meaning of section 170(c)(2)(C). The substance of respondent's argument is that the Restoration Evangelist Trust's entitlement to exempt status is suspect. Respondent did not raise this issue specifically at any time prior to trial. Respondent had granted the Trust an exemption and that exemption was still in effect at the time of the trial of this case. Although Mr. Schroeder testified that the Restoration *161 Evangelist Trust "may" have paid some of his personal expenses, he also testified that, if the Trust had paid his expenses, it was because the Trust was indebted to him for ministerial services which he had performed. Furthermore, Mr. Schroeder also testified that the Trust did engage in legitimate religious or charitable activities, such as evangelical meetings, publications, and broadcasts. Under this record, the Trust was not the mere alter ego of petitioners, as was the religious organization in Miedaner v. Commissioner,81 T.C. 272 (1983). There is nothing in this record to show that petitioners were not entitled to rely on respondent's determination as published in I.R.S. Publication 78 that the Restoration Evangelist Trust was an exempt organization, contributions to which are deductible under section 170. Therefore, we hold that petitioners are entitled to deduct the $ 3,375 they contributed to the Restoration Evangelist Trust in 1982, as well as the $ 282.41 conceded by respondent to be deductible. Petitioners also claimed deductions for certain interest payments made during 1982. Respondent has conceded on brief that petitioners are entitled to deduct *162 a total of $ 4,828.75 in interest payments. This amount is composed of interest on the indebtedness securing petitioners' residence ($ 2,497.04), interest on the indebtedness securing petitioners' rental properties ($ 928.57), and interest on indebtedness incurred by petitioners in the conduct of their businesses ($ 1,403.14). We agree with the amounts conceded by respondent but conclude that in addition to those amounts, petitioners have substantiated an additional $ 79.15 of interest paid on rental property indebtedness, $ 14.51 in interest on business indebtedness, and $ 21.68 in credit card finance charges. We therefore conclude that for 1982 petitioners are entitled to deduct a total of $ 4,944.09 in interest payments. We also agree with respondent's concession on brief that petitioners are entitled to deduct $ 549.04 in taxes paid on their residence and $ 248.32 in taxes paid on their rental properties. We conclude that in 1982 petitioners are entitled to deduct a total of $ 797.36 as taxes paid. Respondent conceded in his brief that petitioners are entitled to deduct (subject to the limitations set out in section 213) $ 413.90 of a claimed $ 847.94 of medical expenditures. *163 The record shows that $ 420.01 of the expenditures respondent did not concede were payments made to petitioners' physician, Dr. Otis Miller, which respondent contends were paid in connection with family trust activities rather than for medical services. [18] However, $ 219.34 of the amount paid to Dr. Miller appears to have been for medical services. The record shows that in 1982 petitioner spent $ 6.42 on pharmaceuticals. We doubt that this amount will exceed the special limitation on deductions for drugs under section 213(b), but do find the figure in the event it does when the Rule 155 computation is prepared. Therefore, petitioners are entitled to deduct, subject to the limitations contained in section 213(a) and (b), a total of $ 633.24 for medical services and $ 6.42 for pharmaceuticals. Petitioners have substantiated $ 738.93 of deductible miscellaneous business expenses in 1982 consisting of expenditures for food purchased in connection with cookware sales demonstrations, expenditures for *164 the maintenance and repair of rental properties, expenditures for office supplies, expenditures for Amtrak tickets for business travel, and some gasoline expenses. Some of these items were conceded on brief by respondent. Petitioners have established that they paid $ 55.00 in political contributions to the local branch of a national political party and to the campaign for the election of a candidate for state office. They are therefore entitled to a credit of $ 27.50 under section 41(a). Finally, petitioners have established their entitlement to deductions for six personal exemptions under section 151. Petitioners introduced numerous checks in evidence and testified with respect to the purpose of some of them, but did not organize the evidence with respect to specific claimed deductions. We have determined the amount of income, deductions and credits which in our view are supported by the evidence. Because petitioners gave no testimony and introduced no evidence at trial in support of their claims that they are entitled to a net operating loss carryover deduction and investment tax credit for 1982, they have failed to meet their burden of proof as to the claimed deduction and *165 credit. [19] Finally, because petitioners have introduced no evidence (i.e., base period income) relating to their claim that they are entitled to income averaging, they have failed to prove that they are entitled to compute their 1982 income under such provisions. Petitioners contend that all income attributable to Mr. Schroeder, including cookware sales income, Nova sales income, and rental income, is exempt from the tax on self-employment income because Mr. Schroeder is a licensed minister. Section 1402(e)(1) provides an exemption for licensed ministers from the tax imposed on self-employment income. However, the exemption applies only to income earned with respect to services performed as a minister in the exercise of his ministry. Section 1402(e)(1); section 1.1402(c)-5(a), Income Tax Regs. Such services include the ministration of sacerdotal functions, *166 the conduct of religious worship, and the maintenance of religious organizations. Section 1.1402(c)-5(b)(2), Income Tax Regs. Such services do not include the sale of cookware, the sale of membership kits in Nova's General Store, the rental of property, or any other services performed by Mr. Schroeder outside his ministerial duties. Templeton v. Commissioner,719 F.2d 1408, 1411 (7th Cir. 1983), affg. a Memorandum Opinion of this Court; Henson v. Commissioner,66 T.C. 835, 839 (1976). We hold that petitioner is liable for self-employment tax on the income earned in and from the performance of such services. Respondent in his amendment to answer alleged that petitioners are liable for an addition to tax under section 6651(a)(1) for failure to file an income tax return for 1982. [20] Since respondent first raised this matter in his amendment to answer, he has the burden of proof on this issue. Rule 142(a). We have previously determined that the Form 1040 which petitioners did file for 1982 was invalid and, therefore, petitioners will be treated for purposes of section 6651(a)(1) as having filed no return for 1982. Cupp v. Commissioner, supra,65 T.C. at 78-79. *167 From the facts in this record, we conclude that this failure to file was not due to reasonable cause but, instead, was due to willful neglect. Petitioners willfully and intentionally obliterated the perjury declaration even though they knew, or should have known, that the declaration was required by statute, by prior decisions of the Supreme Court and this Court, by Treasury regulations, and by the very Form 1040 which they attempted to file. We sustain respondent's contention that petitioners are liable for an addition to tax under section 6651(a)(1). Respondent determined in his notice of deficiency that petitioners were liable for additions to tax under section 6653(a)(1) and section 6653(a)(2) for negligence or intentional disregard of rules and regulations. [21] Petitioners have the burden of proof as to this *168 issue. Rule 142(a). According to petitioners, they were not negligent nor did they intentionally disregard the rules and regulations in reporting Mr. Schroeder's income on the Forms 1041 rather than on valid individual tax returns. Petitioners claim they were innocent taxpayers who merely followed the advice given to them by competent accountants and attorneys. As early as 1978, we held family trust devices, virtually identical to those employed by petitioners, to be shams, ineffective for Federal income tax purposes. Wesenberg v. Commissioner,69 T.C. 1005 (1978). [22] Since that time, this Court and numerous other courts have reached a similar conclusion. Duncan v. Commissioner,756 F.2d 747 (9th Cir. 1985), affg. a Memorandum Opinion of this *169 Court; Holman v. United States,728 F.2d 462 (10th Cir. 1984); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Luman v. Commissioner,79 T.C. 846 (1982); Vercio v. Commissioner,73 T.C. 1246 (1980). We find it absolutely incredible that petitioners were unaware of these decisions, especially in light of the fact that Mr. Schroeder was actively involved in the sale of these tax avoidance devices to other taxpayers. He even testified that, during 1982, he traveled to seminars where he attempted to help taxpayers, who had used these trust forms, with their difficulties with the Internal Revenue Service. We conclude that petitioners were negligent and intentionally disregarded rules and regulations. Therefore, they are liable for additions to tax under section 6653(a)(1) and (2). We conclude for the purposes of section 6653(a)(2) that the entire underpayment is due to negligence. *170 Respondent, in his amendment to answer, also alleged that petitioners were liable for an addition to tax under section 6654 for failure to make estimated tax payments for 1982. Respondent has the burden of proof on this issue. Rule 142(a). The addition to tax under section 6654 is mandatory. Section 6654(a). There are no "reasonable cause" exceptions. United States v. Steck,295 F.2d 682, 685 (10th Cir. 1961); Judge v. Commissioner,88 T.C. 1175 (1987). It is clear from the record that petitioners made no estimated tax payments in 1982. Therefore, respondent has sustained his burden and we uphold his contention that petitioners are liable for additions to tax under section 6654. Respondent determined, in his notice of deficiency, that petitioners were liable for the 10 percent addition to tax imposed under section 6661 for substantial understatements of income tax liability. [23] Where there is substantial authority for the taxpayer's position or adequate disclosure of the facts, the amount of the understatement is reduced by amounts falling within these categories. Petitioners bear the burden of proof on this issue. Rule 142(A). Petitioners *171 have failed to present any evidence that there was substantial authority for their failure to file a return or to report on the Form 1040 they filed the income from the various businesses conducted by Mr. Schroeder. Nor did petitioners disclose, on their Form 1040, the relevant facts surrounding their failure to report such income. Therefore, respondent's determination is upheld. *172 At trial and on brief, respondent requested that we award damages to the United States under section 6673. Section 6673 authorizes this Court to award damages in an amount not to exceed $ 5,000 whenever it appears that the proceedings before us have been instituted or maintained primarily for delay or that the taxpayer's position is frivolous or groundless. This is the third time Mr. and Mrs. Schroeder have instituted and maintained proceedings before this Court. Petitioners raised issues in this case which had been decided against them in the two prior cases. However, in both of the prior cases respondent had allowed some deductions in the notice of deficiency rather than disallowing all claimed deductions as was done here. Also, in those cases respondent at trial conceded that certain deductions had been proved. Here respondent disallowed all business expense deductions and made no concessions at trial. Respondent's determination, which allowed no business expense deductions for a sales business, was unrealistic. Under these circumstances, we conclude that petitioners' position in this case was not frivolous or without merit and that petitioners did not institute or maintain *173 the instant case primarily for delay. Most of the evidence respondent introduced at the trial with respect to his claim for damages was directed to establishing that petitioners failed to pursue available administrative remedies. Since the petition in this case was filed prior to October 22, 1986, the amendment made to section 6673 by section 1552(a) of the Tax Reform Act of 1986, 100 Stat. 2753, providing for an award of damages for failure to pursue administrative remedies is not applicable here. We do not consider an award of damages appropriate in this case. [24]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50-percent of interest due on $ 26,163.00.↩
2. Sec. 6621(d) provided for an increased rate of interest on substantial underpayments attributable to tax motivated transactions. Sec. 6621(d) was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, 100 Stat. 2744. Respondent has conceded that the provisions of sec. 6621(d)↩, as amended, are inapplicable to the "transactions" involved in this case.
*. 50-percent of interest due on $ 26,503.00.↩
3. We note that the J. H. Schroeder Family Trust has been held void by the Supreme Court of Nebraska. First National Bank In Ord v. Schroeder,222 Neb. 330, 383 N.W. 2d 755↩ (1986).
4. Petitioners contend that, by allowing respondent to amend his answer on January 14, 1987, we, in effect, improperly allowed respondent to act outside the three year period (as provided in sec. 6501(a)) during which respondent can assess or collect tax owed by petitioners for their 1982 taxable year. This contention is without merit. Sec. 6503(a)(1) specifically provides that the running of the period of limitations is suspended for any period during which respondent is prevented from assessing and collecting any tax owed and for 60 days after the end of such period. Where the taxpayer has filed a timely petition with this Court, respondent may not assess or collect any tax from the time he issues his statutory notice of deficiency until the time the decision of this Court becomes final. Sec. 6213(a). Thus, the period of limitations which petitioners claim we have allowed respondent to violate will not expire until 60 days after our decision in this case becomes final. ↩
5. Respondent must bear the burden of proof as to all new matters raised in his answer and amendment to answer. Rule 142(a).↩
6. See Schroeder v. Commissioner,T.C.Memo. 1986-467 (appeal filed May 26, 1987), and Schroeder v. Commissioner,T.C.Memo. 1986-583 (appeal filed July 7, 1987, appeal dismissed April 21, 1988). See also (Bonnie & Shannon) Schroeder v. Commissioner,T.C.Memo. 1986-337↩.
7. We recently ruled, in Millsap v. Commissioner,91 T.C. 926 (1988), that section 6020(b) returns filed separately on behalf of married taxpayers were not separate returns within the meaning of section 6013(b) and, therefore, the taxpayers were not foreclosed by section 6013(b)(2)(C) from electing joint filing status even though the Commissioner had issued a notice of deficiency and the taxpayers had filed a petition for redetermination with this Court. However, since appeal in the instant case would lie with the Tenth Circuit, we would be bound by the holding in Smalldridge v. Commissioner,804 F.2d 125↩ (10th Cir. 1986), affg. a Memorandum Opinion of this Court, if it were identical to the instant case.
8. Similarly, in Schroeder v. Commissioner,T.C.Memo. 1986-467 (appeal filed May 26, 1987) and Schroeder v. Commissioner,T.C.Memo. 1986-583↩ (appeal filed July 7, 1987, appeal dismissed April 21, 1988), separate notices of deficiency were issued to petitioners. Thus, the result we reach in this case is not inconsistent with the result reached in those cases.
9. This is not the first time Mr. Schroeder has, "engaged in tactics designed to delay and obstruct respondent's determination of his tax liabilities." Schroeder v. Commissioner,T.C. Memo. 1986-467, 52 T.C.M. 620↩, 623; 55 P-H Memo T.C. par. 86,467 at 2151-86.
10. We approved the use of this same method in Schroeder v. Commissioner,T.C. Memo. 1986-583↩, reconstructing petitioners' 1981 income. Thus, petitioners' 1981 income, as upheld, may include trust income attributable to the last two months of their trusts' 1982 fiscal years.
11. At trial, the Court requested both parties to aid us in reaching a decision by organizing the evidence presented by petitioner, even though, under the Rules of this Court, this was the responsibility of petitioners. Rule 142(a). However, this was not done. The Court then asked that the parties accomplish this task on brief. Pursuant to our request, respondent had prepared, and included in his brief, a list of expenditures which respondent considers are deductible expenses. However, petitioners on brief did not provide the Court with a specific list of expenditures they claimed as the cost of the goods they sold or as deductible expenses.↩
12. Respondent argues that the sale of Nova membership kits was not listed as a business activity of the trust on its Form 1041. However, Form 1041, Schedule C, required the trustee to list only the trust's main business activity, not all of its business activities. ↩
13. This amount includes $ 762.21 in shipping charges paid by petitioners when they sent two men to Salt Lake City, Utah, to pick up a shipment of membership kits.↩
14. The evidence regarding this expenditure was confusing and contradictory. For example, Mr. Schroeder testified that the $ 15,000 expenditure was for the purchase of distribution rights. However, the check representing this expenditure contains a notation stating that it is for Nova stock, rather than distribution rights. ↩
15. The check representing the $ 15,000 expenditure is dated December 23, 1982. Therefore, Nova's General Store would have had to cease operations within eight days of the date Mr. Schroeder signed the check in order for it to be definitely determined in the year 1982 that the distributorship would not ultimately be acquired. It is extremely unlikely that Nova ceased operations eight days after the check was written. Furthermore, it is not clear from this record that the $ 15,000 was not returned to Mr. Schroeder.↩
16. Mr. Schroeder initially testified that the coin "business" was "very, very small." He later claimed that at least $ 30,000 of the $ 69,761 in gross receipts reported on the Loup Valley Cookware Trust Form 1041 were attributable to these transactions. Mr. Shannon Schroeder testified that, in his estimation, there was $ 50,000 to $ 55,000 in gross receipts from the coin "business." The record clearly indicates that the estimated $ 55,000 from coin sales could not have been included on the return of the Loup Valley Cookware Trust. It may be that receipts from the coin sales were deposited in the Loup Valley Cookware Trust bank account, but this fact is not apparent from the record, nor if apparent, does it prove that such receipts were included in sales on the Trust's return. The notice of deficiency determined cost of sales of cookware of over $ 20,000, a figure petitioners have not contested. This amount when added to the claimed coin sales of $ 55,000 is more than the reported sales accepted in the notice of deficiency. We cannot assign any weight to these contradictory statements.↩
17. Respondent also challenges petitioners' right to deduct $ 764.75 contributed to organizations not listed in I.R.S. Publication 78. Petitioners have the burden of proving their entitlement to charitable deductions. Welch v. Helvering,290 U.S. 111 (1930). Among other things, petitioners must prove that the contributions made were to organizations which were "organized and operated exclusively for religious * * * purposes," and that no part of these organizations' net earnings inured to the benefit of any private individual. Sec. 170(c)(2); Davis v. Commissioner,81 T.C. 806, 817 (1983), affd. without published opinion 767 F.2d 931↩ (9th Cir. 1985). They have failed to produce such proof with respect to the organizations to which the $ 764.75 was contributed.
18. The remaining $ 14.03 of the claimed medical expenditures was apparently spent on health foods which is not a deductible medical expense under any facts shown in this record.↩
19. Petitioners have introduced no evidence, whatsoever, establishing their entitlement to depreciation deductions on their business properties. For all the Court knows, these properties may have already been fully depreciated. Therefore, petitioners have not shown that they are entitled to any deductions for depreciation.↩
20. Section 6651(a)(1) provides, in the case of a failure to file a return, for an addition to tax of five percent of the amount required to be shown as tax on such return, plus an additional five percent (not to exceed 25 percent in the aggregate) for each month such failure continues, unless such failure is due to reasonable cause and not due to willful neglect.↩
21. Section 6653(a)(1) provides for an addition to tax of five percent of an underpayment of tax if any part of such underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax of 50 percent of the interest due on the portion of the underpayment which is due to negligence or intentional disregard of the rules or regulations.↩
22. The taxpayers in Wesenberg v. Commissioner,69 T.C. 1005↩ (1978), were represented by Pipp M. Boyls, the attorney whose advice petitioners allegedly relied on in setting up their own sham trusts.
23. Section 8002 of the Omnibus Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951 (the Act), increased the percentage rate of the addition to tax under section 6661 to 25 percent. Pallottini v. Commissioner,90 T.C. 498 (1988). The increase applies to additions assessed after the date of enactment of the Act, October 21, 1986. Respondent has not attempted to assert the 25 percent rate. Where a taxpayer substantially understates his tax liability, section 6661 provides for an addition to tax of 10 percent of the amount of any underpayment attributable to such substantial understatement. Sec. 6661(a). An understatement exists if the amount of tax, which should have been shown on a taxpayer's return, exceeds the amount which is actually shown on such return. Sec. 6661(b)(2)(A). The amount of the understatement is reduced if there is substantial authority for the taxpayer's position or the taxpayer adequately discloses the facts surrounding his treatment of an the item. Sec. 6661(b)(2)(B). If a taxpayer fails to file a return, the amount actually shown on the return is considered to be zero. Sec. 1.6661-2(d)(2), Income Tax Regs.↩ A substantial understatement exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A).
24. We have considered petitioners' arguments that they were denied several rights throughout the course of trial. We find these contentions meritless. Rule 134; Rule 160.↩