# United States Tax Court

T.C. Summary Opinion 2024-2

PATRICIA S. CHAPPELL,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 25309-18S.                    Filed March 11, 2024.

————

Patricia S. Chappell, pro se.

*Evan K. Like* and *Louis H. Hill*, for respondent.

## SUMMARY OPINION

COPELAND, *Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the Petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

Petitioner, Patricia Chappell, has worked as a tax return preparer since 1996. During tax year 2015 she operated a sole proprietorship called Quik Tax. She had a home office in Maineville, Ohio, and a business office in Mason, Ohio, about a 15-minute drive away. The Internal Revenue Service (IRS) audited Ms. Chappell's 2015 federal income tax return and determined various adjustments to the

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

expenses she reported on her Schedule C, Profit or Loss From Business. Specifically, the IRS disallowed $2,310 of expenses that Ms. Chappell reported for the business use of her home, $1,299 of contract labor expenses, $2,352 of phone expenses, and $15,385 of transportation expenses. The Commissioner of Internal Revenue (Commissioner) has since conceded all of the previously disallowed expenses for business use of the home and contract labor. We are therefore left with Ms. Chappell's request for us to redetermine her phone and transportation expenses and to review the Commissioner's determination of a negligence penalty under section 6662(a) and (b)(1).

## *Background*

Some of the facts have been stipulated by the parties and are so found. Ms. Chappell was a resident of Ohio when she timely filed her Petition.

### I. *Quik Tax*

Ms. Chappell began working in tax preparation when she was hired in 1996 by her brother, Lonnie Bennett, who lived and worked in Belpre, Ohio, about a three-hour drive from Ms. Chappell's home in Maineville. Ms. Chappell worked for Bennett Tax Service for two years before opening Quik Tax in 1998. However, Ms. Chappell and Mr. Bennett continued associating professionally and, during 2015, met and corresponded periodically to collaborate on advertising, prepare newsletters, attend educational seminars, and discuss tax questions.

Ms. Chappell's son, Chadrick Travis, worked for Quik Tax as an independent contractor during 2015. Ms. Chappell and Mr. Travis signed an "Independent Contractors [sic] Agreement" on January 2, 2015, specifying (among other things) that Mr. Travis agreed to "pay all expenses incurred by [him] . . . in procuring and furnishing of the above referenced [tax preparation] services to customers." Ms. Chappell compensated Mr. Travis in part by allowing him to pay certain of his personal expenses with her credit and debit cards. Some other relatives of Ms. Chappell also worked for Quik Tax in 2015, at least some of whom Ms. Chappell compensated in part by allowing them use of her credit cards for personal expenses.

### II. *Business Phones*

Ms. Chappell paid a total of $3,418 to AT&T in 2015 for phone "service charges" and "wireless equipment." The AT&T monthly billing

statements for these expenses listed the respective charges for each device, but all devices were part of a single wireless phone plan with a single monthly payment (i.e., Ms. Chappell received only one invoice each month).

A.     *Service Charges*

The phone "service charges" related to AT&T's billing covering five different devices at various times during the year: (1) an Apple cell phone for Ms. Chappell, (2) a Samsung cell phone for Mr. Travis, (3) an iPad, (4) a tablet, and (5) a cell phone used for scheduling client appointments. The service charges for Ms. Chappell's Apple cell phone were particularly high in the February–March billing cycle, when she incurred $266 of roaming fees during a cruise in Florida with Mr. Bennett. Other than those roaming fees, each of the five devices had a set monthly fee that did not vary with the amount of use.

B.     *Wireless Equipment Charges*

The AT&T billing statements also included installment charges for "wireless equipment" purchases. AT&T billed Ms. Chappell $31.25 monthly beginning in March for the purchase of a $750 Apple cell phone, a device she used during 2015. AT&T likewise charged Ms. Chappell $22.84 monthly beginning in June for a $685 Samsung cell phone purchased for Mr. Travis.

III.     *Business Transportation*

Beginning on March 23, 2015, Ms. Chappell used a cell phone application called MileIQ to record most or all of her car trips during the year.[2] She took most of these trips in her Toyota Prius. MileIQ used GPS technology on Ms. Chappell's phone to track starting points, stopping points, and transit mileage. At the end of each trip, Ms. Chappell would identify the trip as business or personal. MileIQ then compiled this information into a spreadsheet (MileIQ log) listing the following information for each recorded trip: date and starting time, category (business or personal), starting and ending locations, distance

---

[2] Ms. Chappell did not use MileIQ or any other contemporaneous recordkeeping for her trips between January 1 and March 22, 2015, nor did she offer any alternative substantiation for those trips.

(in miles), and vehicle.[3] The MileIQ log shows a total of 15,204.8 miles driven between March 23 and December 31, 2015, of which 13,585.8 were labeled "business" and 1,619.0 "personal."

At some point before trial, Ms. Chappell prepared an edited version of the MileIQ log (modified mileage log). The total number of business miles listed in the modified mileage log is less than the comparable figure in the MileIQ log: 11,598.2 versus 13,585.8.[4] Despite the reduction in overall miles, 63 of the trips marked "personal" on the MileIQ log were changed to "business" on the modified mileage log, collectively accounting for 1,190.4 miles. The modified mileage log includes a short "purpose" description for each trip (e.g., "Between Offices," "Supplies," "Staff Recruiting," "[Office] Location Prospecting"); those descriptions were not recorded on the original MileIQ log.

Ms. Chappell's driver's license was suspended for about six months in the middle of 2015. For at least some of that time, Ms. Chappell employed a driver named Melissa Wright, who drove Ms. Chappell as a passenger in one or more vehicles and also drove those vehicle(s) by herself at times, for instance to purchase gas.

IV.    *Tax Return and Examination*

Ms. Chappell filed a Schedule C with her 2015 tax return. She reported gross receipts for Quik Tax of $152,521 and expenses totaling $140,768, which included (among other things) vehicle expenses of $15,385 and utilities expenses of $20,519 (including phone expenses of $3,360).

After the IRS examined Ms. Chappell's 2015 return, the Commissioner issued a notice of deficiency dated September 28, 2018, in which he disallowed deductions for all of her reported vehicle expenses and $2,352 of her reported utilities expenses.[5] The

---

[3] The Vehicle field of the MileIQ report lists "Missing Vehicle" from March 23 through June 2 and lists "Prius" thereafter. Most of the trips tagged with "Missing Vehicle" were taken in the Prius, but Ms. Chappell did not see the appropriate field to enter the vehicle information into MileIQ until June 3.

[4] Ms. Chappell's tally of business miles, listed at the top of the modified mileage log, is 11,591.5. The Court arrived at 11,598.2 miles through its own review of the modified mileage log.

[5] In the notice of deficiency the Commissioner also disallowed deductions for $1,299 of her reported contract labor expenses and all expenses for business use of her

Commissioner also determined an accuracy-related penalty under section 6662(a) and (b)(1). The immediate supervisor of the IRS revenue agent who made the initial determination to impose this penalty approved that determination before its first communication to Ms. Chappell. After concessions by the Commissioner, Ms. Chappell requests that we increase her reported phone expenses from $3,360 to $3,418, and she requests that $10,615 of vehicle expenses be allowed (although she concedes that her vehicle expenses should be decreased from $15,385).

*Discussion*

I.    *Burden of Proof*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Further, a taxpayer is required to maintain sufficient permanent records to substantiate all components of reported net income, including deductible business expenses. *See* I.R.C. § 6001; Treas. Reg. § 1.6001-1(a). The burden of showing entitlement to a claimed deduction is on the taxpayer. *See* Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).[6]

If a taxpayer clearly shows that she incurred a deductible expense but is unable to substantiate the exact amount, the "*Cohan* rule" permits the Court to estimate the amount of the expense, provided there is a reasonable basis for doing so. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985); *Goldsmith v. Commissioner*, 31 T.C. 56, 62 (1958). In making an estimate under the *Cohan* rule, the Court "bear[s] heavily if it chooses upon the taxpayer whose inexactitude is of his own making." *Cohan v.*

---

home; however, before trial he conceded those two adjustments. All of the remaining disallowed utility expenses in the notice of deficiency relate to phone expenses; however, the Commissioner allowed 80% of the aggregate of (1) the $70 monthly "Mobile Share Value 6GB with Rollover Data" fee for Ms. Chappell's multiline cell phone plan, (2) the $25 monthly "Mobile Share Value iPhone on 4G LTE w/VVM" fee for Ms. Chappell's Apple cell phone, and (3) the $10 monthly "Mobile Share Value for Tablet 4G LTE" fee for the iPad and tablet. That is, the Commissioner allowed 80% of $105 per month, or $1,008 of phone expenses. Because Ms. Chappell claimed $3,360 in total for phone expenses, the Commissioner disallowed the remaining $2,352.

[6] Ms. Chappell does not contend, and the record does not establish, that the burden of proof should shift to the Commissioner as to any factual issue under section 7491(a).

*Commissioner*, 39 F.2d at 544. The Court may not use the *Cohan* rule to estimate expenses covered by the strict substantiation requirements of section 274(d), which apply to most transportation expenses. *Sanford v. Commissioner*, 50 T.C. 823, 827–28 (1968), *aff'd*, 412 F.2d 201 (2d Cir. 1969).

II.    *Phone Expenses*

Section 162(a) generally allows a deduction for the ordinary and necessary expenses of carrying on a business while section 262 prohibits a deduction for personal expenses.

Ms. Chappell produced AT&T statements showing monthly billing charges for phone and other wireless service during 2015. The statements provide a breakdown of charges by device for each of Ms. Chappell's five devices, as well as monthly installment billing for the Apple and Samsung cell phones used in the business in 2015, listed on the statements as "wireless equipment" charges. Likewise, the statements reflect the additional roaming fees incurred by Ms. Chappell during her cruise in February.

From the AT&T statements, Ms. Chappell created a phone expense spreadsheet listing each of her five devices as headings across the top and the monthly charges by device in the rows below the heading. She then totaled these monthly amounts for the year. The spreadsheet includes separate columns for monthly payments made and payment dates. The spreadsheet lists $3,166 as the total billed for all five devices in 2015 and $3,418 as the total paid. Of the $3,166 billed, $97 (approximately two-thirds) of the 12/12/14 to 1/11/15 billing related to the 2014 tax year and $78 (approximately one-third) of the 12/12/15 to 1/11/16 billing related to the 2016 tax year.

A.    *Ms. Chappell's Cell Phone*

Ms. Chappell offered evidence that she used her cell phone extensively for business purposes during tax season, including while on the cruise. In addition, while the volume of tax work slowed during other times of the year, it seems appropriate that she would have needed to keep her and Mr. Travis's cell phones, the iPad, the tablet, and the company cell phone active all year. While her phone expense spreadsheet did not account for personal use, pursuant to the *Cohan* rule this Court can estimate the amount of deductible expenses. We accept Ms. Chappell's position that her cell phone use was substantial during tax season and allow 80% of the charges for her Apple cell phone

during tax season, which lasted roughly from January through May 2015. For the remainder of the year we will allow 50% as business related. Accordingly, on the basis of the AT&T billing statements we hold that the total business-related cell phone charges for her personal phone were $1,296. This amount includes $313 of installment payments on the phone purchase.

### B. *Mr. Travis's Cell Phone*

Ms. Chappell provided a cell phone to Mr. Travis for Quik Tax business use. She testified that in addition to the cell phone she paid for on his behalf, Mr. Travis also had a personal cell phone and two work phones during 2015. Ms. Chappell indicated that she paid for the additional phone so that Mr. Travis could perform client tax work on her behalf and so that she could "bypass everybody else" and always reach Mr. Travis. We found this testimony credible. Because Ms. Chappell provided the phone to her independent contractor for tax preparation work, we will allow Samsung cell phone expenses of $555 incurred in 2015.[7] This amount includes $160 of installment payments made toward the phone purchase.

### C. *Other Devices*

Ms. Chappell also provided sufficient records for us to calculate the sum of the remaining phone expenses, relating to service for the iPad, tablet, and appointment-scheduling phone, and certain service charges. We therefore will allow these expenses to the extent they relate to the 2015 tax year. Specifically, we will allow $15 for the iPad, $167 for the tablet, $161 for the appointment-scheduling phone and $55 of service charges, a total of $398.

---

[7] The Commissioner would have us rule that Ms. Chappell cannot deduct the cost of Mr. Travis's cell phone service simply on the grounds that the Independent Contractors Agreement specifies that Mr. Travis will "pay all expenses incurred by [him] . . . in procuring and furnishing of the above referenced [tax preparation] services to customers." However, the record clearly shows that Ms. Chappell, not Mr. Travis, made all payments on the Samsung cell phone and it is not unusual to provide cell phones to independent contractors in order for them to speak to the business' owner and its clients. Accordingly, in redetermining Ms. Chappell's income tax we look to the charges she actually incurred and paid for, regardless of the strict terms of the Independent Contractors Agreement.

D.    *Wireless Equipment*

The Commissioner takes issue with the monthly AT&T billing statement charges related to the installment purchase of the Apple and Samsung cell phones costing $750 and $685, respectively.  Again, these costs were referred to by the parties and in billing statements as "wireless equipment."  While such amounts might have been capitalized under section 263(a) and Treasury Regulation § 1.263(a)-2(d),[8] they could also have been immediately deducted under section 179.  Because Ms. Chappell is a cash basis taxpayer, we allow the monthly installments on the Apple and Samsung cell phones (as included in the monthly phone charges detailed above) to be deducted under section 179.

E.    *Summary of Phone and Wireless Expenses Allowed*

In sum, we will allow phone and wireless equipment expenses of $2,249 ($1,296 + $555 + $398), rather than the $3,360 Ms. Chappell included as a utilities expense on her return, making the downward adjustment $1,111 rather than the $2,352 determined in the notice of deficiency.

III.    *Vehicle Expenses*

Under section 274(d), taxpayers must meet strict substantiation requirements to deduct certain expenses under section 162, including expenses for the use of "listed property" as defined in section 280F(d)(4), such as passenger automobiles.  To meet these strict requirements with respect to listed property, taxpayers must substantiate by adequate records, or by sufficient evidence corroborating their own statements, (1) the amount of the expense, (2) the amount of total use and of business use of the listed property during the relevant tax year, (3) the date of each expense or use of the listed property, and (4) the business purpose of the expense or use.  *See* I.R.C. § 274(d); Temp. Treas. Reg. § 1.274-5T(b)(6).[9]

---

[8] We note that the exception under Treasury Regulation § 1.162-3 that allows a business deduction for "materials and supplies" does not apply here, since (among other reasons) both pieces of wireless equipment cost more than $200.  *See* Treas. Reg. § 1.162-3(c)(1)(iv).

[9] Section 7805(e)(2) provides that temporary regulations expire within three years after the date of issuance.  However, that rule applies only to regulations issued

To substantiate vehicle expenses by way of adequate records, taxpayers must maintain a contemporaneous log, trip sheet, or similar record, as well as corroborating documentary evidence, to establish each of the four required elements listed above. *See* Temp. Treas. Reg. § 1.274-5T(c)(2)(i) and (ii). In the absence of adequate records, taxpayers may establish each required element by providing both "[their] own statement, whether written or oral, containing specific information in detail as to such element" and "other corroborative evidence sufficient to establish such element." *Id.* subpara. (3)(i).

Treasury Regulation § 1.274-5(j)(2) authorizes the Commissioner to provide an alternative, simplified method for calculating vehicle expenses that requires neither adequate records of actual costs nor sufficient corroborating evidence of actual costs:

> The Commissioner may establish a method under which a taxpayer may use mileage rates to determine the amount of the ordinary and necessary expenses of using a vehicle for local transportation and transportation to, from, and at the destination while traveling away from home in lieu of substantiating the actual costs. . . . The taxpayer will not be relieved of the requirement to substantiate the amount of each business use (i.e., the business mileage), or the time and business purpose of each use.

Revenue Procedure 2010-51, § 4.01, 2010-51 I.R.B. 883, 884, clarifies that

> [a] taxpayer may use the business standard mileage rate (published in an annual notice) to substantiate the amount of a deduction for an automobile that a taxpayer either owns or leases. A taxpayer generally may deduct an amount equal to either the business standard mileage rate times the number of business miles traveled or the actual

---

after November 20, 1988. *See* Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, § 6232(b), 102 Stat. 3342, 3735. Temporary Treasury Regulation § 1.274-5T was first issued in 1985, *see* T.D. 8061, 1985-2 C.B. 93, 100–09, and none of the provisions of that regulation relied upon here has since been amended.

> costs (both fixed and variable) the taxpayer pays or incurs
> that are allocable to traveling those business miles . . . .[10]

I.R.S. Notice 2014-79, § 3, 2014-53 I.R.B. 1001, 1001, set out a business standard mileage rate for 2015 of 57.5 cents. Ms. Chappell asks the Court to allow her actual vehicle expenses as business deductions or, in the alternative, to allow a standard mileage rate deduction.

A. *Actual Vehicle Expenses*

Ms. Chappell did not keep any records of her vehicles' business use percentages between January 1 and March 22, 2015, so we cannot allow any of her reported vehicle expenses for that period in any event. *See* I.R.C. § 274(d); Temp. Treas. Reg. § 1.274-5T(b)(6).

As for the period of March 23 to December 31, Ms. Chappell provided bank records and some receipts for her vehicle expenses and relied on the MileIQ log and/or the modified mileage log for her business use percentage. However, much of her offered substantiation is not sufficiently reliable.

Ms. Chappell's receipts for fuel, insurance, interest on a car loan, repairs, licensing fees, and depreciation are flawed in that several other people had use of her debit and credit cards during 2015 and may have made personal use of those cards. For example, Ms. Chappell's remarks at trial suggest that Ms. Wright may have used the cards for filling up her personal vehicle rather than a car used for Ms. Chappell's business needs. If that is so, calculating the business use percentage from either of the mileage logs, *see* Temp. Treas. Reg. § 1.274-5T(b)(6)(i)(B), would not be reliable. (This business percentage is needed for prorating the total actual vehicle costs to determine the deductible portion.)

Moreover, the likelihood that some indeterminate portion of Ms. Chappell's reported vehicles costs was actually incurred for nonbusiness uses is exacerbated by the fact that her receipts show two or three same-day gas purchases on at least ten different days—days on which neither of the mileage logs shows an excessive number of miles driven. At trial, the Commissioner's counsel confronted Ms. Chappell with ten instances where, in the receipts she submitted to the Court, she identified two separate purchases on the same day as having been made

---

[10] Revenue Procedure 2010-51 has been superseded by Revenue Procedure 2019-46, 2019-49 I.R.B. 1301. However, Revenue Procedure 2010-51 was in effect during Ms. Chappell's 2015 tax year.

for fuel. (In one case the number of purported same-day fuel purchases was three.)[11] Ms. Chappell's records also identify a purchase for gas in Kings Mill, Ohio, on July 9, 2015, a date when both the MileIQ log and the modified mileage log indicate that she was in the Washington, D.C., area for a conference hosted by the IRS. In response to these various incongruities, Ms. Chappell speculated that Ms. Wright may have sometimes purchased gas using one of Ms. Chappell's debit or credit cards for a car owned by Ms. Wright or a third party, without Ms. Chappell's knowledge or permission. For these reasons we decline Ms. Chappell's invitation to rely on actual expenses and turn to the standard mileage rate to determine whether vehicle expenses can be allowed.

B.  *Standard Mileage Rate*

We hold that Ms. Chappell qualifies for a deduction using the business standard mileage rate pursuant to Revenue Procedure 2010-51, in lieu of actual expenses, for the period of March 23 to December 31, 2015. Such a deduction required Ms. Chappell to substantiate the number, time, and purpose of her business miles under either the "adequate records" standard or the "sufficient evidence" standard of section 274(d) and Temporary Treasury Regulation § 1.274-5T(c)(2) and (3). *See* Treas. Reg. § 1.274-5(j)(2). The MileIQ log was compiled contemporaneously during the period of March 23 to December 31; although it did not specify the exact business purpose of any of the trips listed (the trips are identified simply as "business" or "personal"), she produced a modified mileage log specifying a particular business purpose for each of the business-related trips (e.g., "Supplies," "Staff Recruiting," etc.). She corroborated that evidence with credible testimony at trial.

In addition, we can allow Ms. Chappell a standard-mileage-rate deduction for those trips whose business purpose is self-evident from their starting and ending points. Temporary Treasury Regulation § 1.274-5T(c)(2)(ii)(B) provides as follows:

> In order to constitute an adequate record of business purpose within the meaning of section 274(d) and this

---

[11] On none of these ten days does either the MileIQ log or the modified mileage log show an unduly large number of miles. The maximum daily mileage recorded among the ten days was 227.5. (This amount was recorded on March 29, 2015, and was an outlier by far.) Ms. Chappell testified that her Prius had a ten-gallon fuel tank and a fuel economy of around 40 miles per gallon.

> paragraph (c)(2), a written statement of business purpose generally is required. However, the degree of substantiation necessary to establish business purpose will vary depending upon the facts and circumstances of each case. Where the business purpose is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required.

This exception applies to those trips that Ms. Chappell took between her Maineville home and her Mason office, in light of the Commissioner's concession that the Maineville home office qualified as Ms. Chappell's principal place of business under section 280A(c)(1)(A). *See Curphey v. Commissioner*, 73 T.C. 766, 777–78 (1980) (holding that commuting expenses between a taxpayer's home office and a business location may be deductible if the home office is the taxpayer's principal place of business); Rev. Rul. 99-7, 1999-1 C.B. 361 (same). As a result, the modified mileage log meets the "sufficient evidence" standard, even if it did not strictly meet the contemporaneous "adequate records" standard. We thus allow a vehicle expense deduction based on 11,598 business miles at 57.5 cents per mile, or $6,669 (versus the $15,385 that Ms. Chappell claimed on her 2015 return and the $10,615 that she requested in her briefings).

IV. *Accuracy-Related Penalty*

Section 6662 imposes a 20% accuracy-related penalty on an underpayment of tax attributable to (among other things) negligence or disregard of rules or regulations. I.R.C. § 6662(a) and (b)(1). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to maintain adequate books and records or to substantiate items properly. I.R.C. § 6662(c). Disregard includes "any careless, reckless, or intentional disregard." *Id.*

Under section 7491(c), the Commissioner bears the burden of production regarding penalties and must come forward with sufficient evidence indicating that it is appropriate to impose a penalty in the absence of available defenses. *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). As we noted in *Graev v. Commissioner*, 149 T.C. 485, 493 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016), one part of this burden is to show compliance with section 6751(b)(1), which provides that "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination."

Here, the parties have stipulated facts and documents substantiating that the Commissioner met the supervisory approval requirement with respect to his determination of the penalty under section 6662(a) and (b)(1).

We next note that Ms. Chappell was at least careless in claiming deductions, without adequate substantiation or records, for the full cost of her cell phone service and for her actual vehicle costs. *See* I.R.C. § 6001 (providing that taxpayers "shall keep such records . . . as the Secretary may from time to time prescribe"); Treas. Reg. § 1.6001-1(a) (providing that taxpayers "shall keep such permanent books of account or records . . . as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information").

Section 6664(c)(1) grants an exception to a penalty under section 6662 "if it is shown that there was a reasonable cause for such portion [of an underpayment of tax] and that the taxpayer acted in good faith with respect to such portion." The determination as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, considering all pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1). Generally, the most important factor in determining the existence of reasonable cause is the taxpayer's effort to ascertain her correct tax liability. *Id.* Circumstances that may signal reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer. *Id.*

Ms. Chappell contends that she qualifies for a reasonable cause exception because in 2015 she was caring for her elderly disabled mother and was herself suffering from a painful tumor. Additionally, her daughter passed away in November 2015 after a period of injury and infection beginning in 2014, leaving Ms. Chappell to care for her four grandchildren while grieving for her daughter.

We sympathize with Ms. Chappell's personal difficulties in 2015. However, she testified that during that year she continued to run a vibrant tax preparation business, make multiple business trips almost every day, and work up to 12 hours a day. This Court has consistently held that taxpayers dealing with personal or family illness, incapacity, or death do not qualify for a reasonable cause exception if they were able to continue their business affairs during the relevant period. *See, e.g.,* *Judge v. Commissioner*, 88 T.C. 1175, 1189–91 (1987); *Hardin v.*

*Commissioner*, T.C. Memo. 2012-162, 103 T.C.M. (CCH) 1861, 1862; *Ruggeri v. Commissioner*, T.C. Memo. 2008-300, 96 T.C.M. (CCH) 511, 513 (collecting cases). Moreover, Ms. Chappell was almost surely familiar with the substantiation requirements for business deductions, given her professional experience as a tax preparer. Therefore, we hold Ms. Chappell liable for an accuracy-related penalty under section 6662(a) and (b)(1).

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*